# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-3007

_____

Glen Johnson, Trustee of the Operating Engineers Local #49 Health and Welfare Fund; Timothy Gillen, Trustee of the Operating Engineers Local #49 Health and Welfare Fund; Kyle Jones, Trustee of the Operating Engineers Local #49 Health and Welfare Fund; Steven Hall, Trustee of the Operating Engineers Local #49 Health and Welfare Fund; Clayton Johnson, Trustee of the Operating Engineers Local #49 Health and Welfare Fund; Mark Hubbard, Trustee of the Operating Engineers Local #49 Health and Welfare Fund; Steve Piper, Trustee of the Operating Engineers Local #49 Health and Welfare Fund; Bill Patt, Trustee of the Operating Engineers Local #49 Health and Welfare Fund; Michael R. Fanning, Fiduciary of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers; Joseph Ryan, Trustee of the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program; Bruce Carlson, Trustee of the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program; Glen Johnson, Trustee of the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program; Frank Frattalone, Trustee of the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program; Lee Hiller, Trustee of the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program; Tony Phillippi, Trustee of the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program; Greg Waffensmith, Trustee of the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program; Mark Ryan, Trustee of the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program; The Operating Engineers Local #49 Health and Welfare Fund; The Central Pension Fund of the International Union of Operating Engineers and Participating Employers; The Local #49 International

Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program

*Plaintiffs - Appellants*

v.

Charps Welding & Fabricating, Inc.; Clearwater Energy Group, Inc., formerly known as C & G Holding Company of Clearbrook, Inc.; C & G Construction Inc. of Clearbrook; Alpha Oil & Gas Services, Inc.; Kenneth Charpentier

*Defendants - Appellees*

_____

No. 19-1206

_____

Glen Johnson, Trustee of the Operating Engineers Local #49 Health and Welfare Fund; Timothy Gillen, Trustee of the Operating Engineers Local #49 Health and Welfare Fund; Kyle Jones, Trustee of the Operating Engineers Local #49 Health and Welfare Fund; Steven Hall, Trustee of the Operating Engineers Local #49 Health and Welfare Fund; Clayton Johnson, Trustee of the Operating Engineers Local #49 Health and Welfare Fund; Mark Hubbard, Trustee of the Operating Engineers Local #49 Health and Welfare Fund; Steve Piper, Trustee of the Operating Engineers Local #49 Health and Welfare Fund; Bill Patt, Trustee of the Operating Engineers Local #49 Health and Welfare Fund; Michael R. Fanning, Fiduciary of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers; Joseph Ryan, Trustee of the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program; Bruce Carlson, Trustee of the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program; Glen Johnson, Trustee of the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program; Frank Frattalone, Trustee of the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program; Lee Hiller, Trustee of the Local #49

-2-

International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program; Tony Phillippi, Trustee of the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program; Greg Waffensmith, Trustee of the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program; Mark Ryan, Trustee of the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program; The Operating Engineers Local #49 Health and Welfare Fund; The Central Pension Fund of the International Union of Operating Engineers and Participating Employers; The Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program

*Plaintiffs - Appellants*

v.

Charps Welding & Fabricating, Inc.; Clearwater Energy Group, Inc., formerly known as C&G Holding Company of Clearbrook, Inc.; C & G Construction Inc. of Clearbrook; Alpha Oil & Gas Services, Inc.; Kenneth Charpentier

*Defendants - Appellees*

_____

Appeals from United States District Court
for the District of Minnesota

_____

Submitted: October 17, 2019
Filed: February 7, 2020

_____

Before SMITH, Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

-3-

The Trustees of three employee benefit funds sued Charps Welding & Fabricating, Inc., its corporate affiliates—C&G Construction Inc., Alpha Oil and Gas, Inc., and Clearwater Energy Group, Inc.—and their owner, Kenneth Charpentier. The Trustees assert that Charps and its affiliates breached collective bargaining agreements by not contributing to the employee benefit funds for work performed by the affiliates, in violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1145. The district court granted summary judgment to the defendants and awarded them attorney's fees and costs. The Trustees appeal. Having jurisdiction under 28 U.S.C. § 1291, this court affirms appeal 18-3007, and reverses and remands appeal 19-1206.

I.

Kenneth Charpentier founded all the defendant companies. He first created Charps Welding & Fabricating as a union company to service oil and gas pipelines, then C&G Construction as a non-union company for pipelines in North Dakota. For financing, Charpentier added Clearwater Energy Group, Inc. as a parent company for both Charps and C&G. Charpentier later founded Alpha Oil and Gas, Inc., another non-union company, to eventually replace C&G. As owner, Charpentier retained control and high-level management of all the companies. They shared a corporate headquarters and some administrative staff. The companies also lent each other workers or jobs. They shared a line of credit (based on their collective accounts receivable) and lent each other funds.

Charps entered collective bargaining agreements requiring contributions to the employee benefit funds. The district court found Charpentier personally liable for Charps's obligations under the agreements. The agreements stated:

> If and when Employer shall perform work covered by this Agreement
> under its own name, under the name of another, as a corporation,
> company, partnership, enterprise, or any combination, including a joint

-4-

venture, this Agreement shall be applicable to all such work performed under the name of Employer or the name of any other corporation, company, partnership, enterprise, combination or joint venture.

Charps's affiliates—C&G, Alpha, and Clearwater—did not enter the collective bargaining agreements. The Trustees assert that under ERISA, Charps, its affiliates, and Charpentier owe contributions for work performed by the affiliates. Ordinarily, a collective bargaining agreement imposes a duty only on parties to the agreement. *Crest Tankers, Inc. v. Nat'l Mar. Union of Am.*, 796 F.2d 234, 237 (8th Cir. 1986). The Trustees counter that the affiliates were Charps's alter egos, or in joint venture or joint enterprise with Charps. Under these theories, the affiliates' work is covered by the collective bargaining agreements. *See Trustees of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 729 (8th Cir. 2008). Alternately, the Trustees argue that the agreements' language independently imposes a duty to contribute for the affiliates' work.

This court reviews de novo a grant of summary judgment. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

II.

The alter ego doctrine may apply when a pension fund tries to collect unpaid contributions. *See Greater Kansas City Laborers Pension Fund v. Superior Gen. Contractors, Inc.*, 104 F.3d 1050, 1055 (8th Cir. 1997) (discussing alter ego doctrine of corporate law). A corporation acts as another's alter ego if the corporation is (1) controlled by another to the extent it has independent existence in form only and (2) used as a subterfuge to defeat public convenience, justify wrong, or perpetuate a fraud. *Id.* In the context of a collective bargaining agreement, a "critical part" of the inquiry is whether an employer displays anti-union sentiment by using the alter ego to avoid its obligations. *Crest Tankers*, 796 F.2d at 237-38; *Marathon Ashland*

***Petroleum, LLC. v. Int'l Bhd. Of Teamsters, Local No. 120***, 300 F.3d 945, 948 (8th Cir. 2002). *See also **Carpenters Dist. Council of Kansas City Pension Fund v. JNL Const. Co.***, 596 F.3d 491, 496 (8th Cir. 2010) (finding no subterfuge where employer did not use purported alter ego to avoid paying contributions).

Like the district court, this court need not address the first factor, whether the affiliates are controlled by Charps to the extent that they are independent in form only. *See **Greater Kansas City***, 104 F.3d at 1054-55 (listing factors).

The Trustees have failed to show a genuine issue of material fact that Charps's affiliates are used as a subterfuge, because the employers do not demonstrate anti-union sentiment. *See **Crest Tankers***, 796 F.2d at 237-38. The affiliates exist for business reasons based on the market structure and financing. True, some workers did change employment between the defendant companies in this high turnover industry. However, of over 5,500 employees in all the defendant companies, only 135 performed work for Charps and were paid by an affiliate, or performed work for an affiliate and were paid by Charps. The companies did keep a few employees on Charps's payroll until their retirement benefits vested, instead of transferring them to a non-union affiliate, but this accommodation does not show anti-union sentiment. Although the companies swapped union and non-union employees on a single worksite, the Trustees do not demonstrate that employers acted from any motive besides avoiding friction. Charps listed some multi-state workers under the unions of their state of residence, but this shows only a need to simplify payroll procedures. Common business practices do not suggest subterfuge. *See **Bjorkedal***, 516 F.3d at 729.

The Trustees fail to demonstrate a genuine issue of material fact that Charps's corporate affiliates served as its alter egos.

-6-

III.

The Trustees argue that Charps entered into a joint venture with its affiliates. Under Minnesota law, a joint venture exists if there is (1) contribution by all parties; (2) joint proprietorship and control; (3) sharing of profits but not necessarily of losses; and (4) a joint venture contract. *Rosenberg v. Heritage Renovations, LLC*, 685 N.W.2d 320, 332 (Minn. 2004). A joint venture imputes the relationship necessary for liability when parties otherwise lack one. *Bjorkedal*, 516 F.3d at 729. Because the companies here already share a legal relationship as affiliates, the joint venture doctrine does not apply. *See id.* Even if the doctrine applied, the Trustees fail to demonstrate a genuine issue of material fact on two of the four required elements: joint proprietorship and control, and sharing of profits.

As for joint proprietorship and right of mutual control, the Trustees do not identify facts showing a genuine issue that Charps's affiliates C&G and Alpha had the right to control any joint venture. *See Meyers v. Postal Fin. Co.*, 287 N.W.2d 614, 617-18 (Minn. 1979). Sharing common employees or using each other's services does not imply the requisite control for a joint venture. *Hansen v. St. Paul Metro Treatment Ctr., Inc.*, 609 N.W.2d 625, 629 (Minn. Ct. App. 2000). Any control by the parent company, Clearwater, arose from its legal relationship as a holding company, and thus does not support a joint venture theory. *See Bjorkedal*, 516 F.3d at 729. Charpentier's authority over all of the companies does not show right of mutual control by C&G and Alpha. *Cf. Tate v. Ballard*, 68 N.W.2d 261, 265-66 (Minn. 1954) (distinguishing a party to a joint venture from a corporation he had the right to control); *Wilson v. Maryland*, 189 N.W. 437, 439 (Minn. 1922) (same).

The Trustees also have not provided facts showing a genuine issue of sharing of profits, which may be express or implied. *See Meyers*, 287 N.W.2d at 618. The inter-company loans and mutual line of credit are not sharing of profits. *See Treichel v. Adams*, 158 N.W.2d. 263, 266 (Minn. 1968). A creditor does not share profits

even when its loan would be repaid from sales proceeds, and it paid the debtor's bills to protect his security. *Id.* (finding no joint venture). Here, each company maintained its own financial records and had to repay the debts it owed the others. Repaying debts is not sharing of profits. *Id.*

Because the Trustees fail to provide facts showing an issue of mutual control or profit-sharing by the companies, they have not identified a genuine dispute that a joint venture exists.

IV.

The Trustees argue that the companies formed a joint enterprise. A joint enterprise requires (1) a mutual understanding for a common purpose and (2) a right to a voice in the direction and control of the means used to carry out that common purpose. *Mellett v. Fairview Health Servs.*, 634 N.W.2d 421, 424 (Minn. 2001).

For the second requirement, "[e]ach participant must have an equal right to direct and govern the movements and conduct of every other participant" regarding the common purpose. *Delgado v. Lohmar*, 289 N.W.2d 479, 482 (Minn. 1979); *Fu v. Owens*, 622 F.3d 880, 884 (8th Cir. 2010), *quoting Murphy v. Keating*, 283 N.W. 389, 392 (Minn. 1939). The Trustees do not show that each defendant company "had a voice in the direction and control of the means to carry out the common purpose." *See Auto Owners Ins. v. Reinsurance Ass'n of Minnesota*, 514 N.W.2d 604, 606 (Minn. Ct. App. 1994). As discussed, the Trustees provide no evidence that Charps's affiliates C&G and Alpha had a legal right to control Charps. *See Olson v. Ische*, 343 N.W.2d 284, 288 (Minn. 1984) (requiring a legal right to control). Nor do the Trustees show sufficient "overlapping qualities" to infer an equal right to control, because they do not show that the defendant companies shared "the same corporate management team" or had "uniform operations." *See State v. Minnesota Sch. of Bus., Inc.*, 915 N.W.2d 903, 905 (Minn. Ct. App. 2018), *rev'd in part on other*

*grounds*, 935 N.W.2d 124 (Minn. 2019). The Trustees do not meet their burden to show a joint enterprise.

V.

The Trustees believe that the collective bargaining agreements impose a duty to make contributions to the benefit funds for the work performed by the affiliates. Courts use ordinary principles of contract law to interpret collective bargaining agreements. *CNH Indus. N.V. v. Reese*, 138 S. Ct. 761, 763 (2018). If contractual language is clear, it controls. *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015). In the absence of different intent, language has its generally prevailing meaning. *Finley Hosp. v. Nat'l Labor Relations Bd.*, 827 F.3d 720, 725 (8th Cir. 2016).

To the extent the Trustees argue that the collective bargaining agreements bind the affiliates to pay contributions, they are not liable under the agreements because they are not parties to them and were not Charps's alter ego, or even in a joint venture or joint enterprise. *See* **Crest Tankers**, 796 F.2d at 237.

Charps, a party to the agreements, must pay contributions when it performs work covered by the agreements. This includes work Charps performs "as a corporation, company, partnership, enterprise, or any combination, including a joint venture." The Trustees focus on the term "any combination." In context, "combination" refers to those business entities whose close relationship imputes liability for one another's obligations, such as a joint venture. *Cf.* **In re Marine Pollution Serv., Inc.**, 857 F.2d 91, 95 (2d Cir. 1988) (equating a combination with a merger or buyout and finding none where companies function as separate entities, even with common ownership and temporary sharing of employees). Because the Trustees fail to provide facts showing a genuine issue of a joint venture, joint

-9-

enterprise, or alter ego, the defendant companies do not share a sufficiently close relationship to be a combination.

The Trustees emphasize the collective bargaining agreements' provision that Charps must contribute for work it performs "under the name of another." To prevail, the Trustees must show evidence that Charps performed work "under the name" of one of its affiliates. This requires showing an intimately close relationship, such as that of an alter ego. *See Local Union 59 v. Green Corp.*, 725 F.2d 264, 267-68 (5th Cir. 1984) (finding that an alter ego relationship satisfies the "under the name of another" requirement in a collective bargaining agreement).

The Trustees have not shown a genuine issue that the defendant companies formed a relationship of alter ego, joint venture, or joint enterprise. Further, the collective bargaining agreements do not require the defendants to contribute for the work of Charps's affiliates. Therefore, the defendants do not owe contributions for the affiliates' work.

## VI.

The Trustees argue that the district court did not address Charps's liability for contributions based on its own employees' work.

The Trustees did not meet their burden in opposing summary judgment on this claim. In their opposition brief, they did not direct the district court to evidentiary materials setting out specific facts showing a genuine issue that Charps had insufficiently contributed for its own employees' work. *See Torgerson*, 643 F.3d at 1042. True, the Trustees argued that their "audit findings" showed the measure of damages for unpaid contributions. However, they focused exclusively on unpaid contributions for the affiliates' employees, arguing vicarious liability. The Trustees did not explain that they also offered the audit findings to support the theory that

-10-

Charps made insufficient contributions for its own employees. The declaration accompanying the audit findings explained the auditor's methodology, but not the significance of the data. Nor did the Trustees call this theory to the district court's attention when arguing their cross-motion for summary judgment. Instead, the Trustees again focused on vicarious liability, analyzing Charps's employees only in that context. Because the Trustees "failed to provide meaningful legal analysis" explaining how the disputed facts supported their claim for unpaid contributions for Charps's employees, the claim could not survive the defendants' motion for summary judgment. *See Quinn v. St. Louis Cty.*, 653 F.3d 745, 752 (8th Cir. 2011). "[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument." *Satcher v. Univ. of Arkansas Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009).

The district court ruled on this claim by stating that it addressed the Trustees' arguments "to the extent that they cited to the record with sufficient particularity." In ruling on a motion for summary judgment, "[a] district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996). *See also Holland v. Sam's Club*, 487 F.3d 641, 644 (8th Cir. 2007). This is especially true when, as here, the materials consist of thousands of pages of business records covering over 5,000 employees over multiple years. *See Jain v. CVS Pharmacy, Inc.*, 779 F.3d 753, 759 (8th Cir. 2015) (holding that the district court did not abuse its discretion by refusing to pore through over 500 pages of business records containing thousands of data points).[1] The Trustees cannot

---

[1]The Trustees also argue that the district court erred by disregarding admissible evidence. The district court properly considered the Trustees' arguments to the extent they cited to the record with particularity. *See* **Fed. R. Civ. P. 56(c)1(A)**. *See also Barge*, 87 F.3d at 260. The district court did not abuse its discretion in refusing to pore through voluminous records without sufficient citations or an admissible declaration interpreting them. *See Jain*, 779 F.3d at 758-59.

-11-

cure this shortcoming on appeal by citing to some specific facts that support their claim. *See Holland*, 487 F.3d at 644. *See also Pedroza v. Cintas Corp. No. 2*, 397 F.3d 1063, 1069 (8th Cir. 2005) (refusing to consider evidence in the district court's records that the nonmoving party had failed to bring to the attention of the district court in her brief in opposition to summary judgment).

On appeal, the Trustees still do not make sufficient citations to the record. In their appellants' brief, the Trustees' argument on this claim does not cite to evidentiary materials setting out specific facts. *See Torgerson*, 643 F.3d at 1042. Conclusory assertions and citations to one's own arguments are insufficient to survive summary judgment. *W. Heritage Ins. Co. v. Asphalt Wizards*, 795 F.3d 832, 839-40 (8th Cir. 2015). In their reply brief, the Trustees assert that "at least 149 employees were falsely reported by Charps, which necessarily resulted in the underpayment of contributions." As support, the Trustees cite 580 pages of business records. They do not even summarize the most relevant information: how many of Charps's employees worked for another company or vice versa, and how many work-hours Charps failed to report as a result. *Cf. Jain*, 779 F.3d at 759. The Trustees also cite 34 pages of information compiled by their counsel about three employees. They do not draw the court's attention to salient points or explain how this information supports their assertion. When arguing that Charps underreported hours and made insufficient contributions, the Trustees cite another 149 pages of information about 39 employees, and 546 pages from the same 580 pages described above. The Trustees again fail to explain how this material substantiates their claim. The tables within the 149 pages list some employees without any information except their names, leaving a court unable to determine the purpose of the citation. Even if there is some relevant information in the record, this court "will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments." *See Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006). The Trustees do not "set out specific facts showing that there is a genuine issue for trial." *See Torgerson*, 643 F.3d at 1042.

VII.

The Trustees argue that the district court erred by failing to compel Charps and its affiliates to produce spreadsheets of payroll data. This court reviews a district court's discovery rulings for abuse of discretion, a standard that is "both narrow and deferential," granting relief only when errors result in fundamental unfairness. *Sallis v. Univ. of Minn.*, 408 F.3d 470, 477 (8th Cir. 2005).

The defendant companies produced the requested data in other formats, including the original documents used to create the spreadsheets. They also produced reports compiled from the spreadsheets. Producing the spreadsheets would be burdensome. The district court must limit discovery if it determines that it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." **Fed. R. Civ. P. 26(b)(2)(C)**. *See also Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1060 (8th Cir. 2005). The district court did not abuse its discretion in denying, as duplicative, the Trustees' motion to compel production of the spreadsheets.

VIII.

After granting summary judgment, the district court awarded attorney's fees and costs to the defendants under 29 U.S.C. § 1132(g)(1). This court reviews for abuse of discretion an award of fees and costs under ERISA. *Brown v. Aventis Pharm., Inc.*, 341 F.3d 822, 828 (8th Cir. 2003).

In an ERISA action by a fiduciary, the district court may award "a reasonable attorney's fee and costs of action to either party." **29 U.S.C. § 1132(g)(1)**. The party seeking fees and costs must show "some degree of success on the merits" but need not be a "prevailing party." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242,

245, 252 (2010). The defendants here succeeded on the merits by prevailing at summary judgment.[2] *See id.* at 255-56.

A.

In awarding attorney's fees, courts consider five non-exclusive factors, which are general guidelines, not mechanically applied. ***Martin v. Arkansas Blue Cross & Blue Shield***, 299 F.3d 966, 972 (8th Cir. 2002) (en banc), *citing **Lawrence v. Westerhaus***, 749 F.2d 494, 495-96 (8th Cir. 1984). These factors are: (1) the degree of the opposing parties' culpability or bad faith; (2) the opposing parties' ability to satisfy an award; (3) deterrence of others in similar circumstances; (4) whether the requesting parties sought to benefit all participants and beneficiaries of an ERISA plan, or to resolve a significant legal ERISA question; and (5) the relative merits of the parties' positions. ***Westerhaus***, 749 F.2d at 496.

The district court did not abuse its discretion in awarding attorney's fees, because its decision has factual support and follows applicable law. *See **Martin***, 299 F.3d at 969. The district court, based on detailed findings of fact, determined that the second, third, and fifth factors strongly support an award. The Trustees provide no evidence that the funds cannot satisfy an award based on their assets or that beneficiaries will be harmed. An award deters similarly meritless claims and lengthy, inadequately supported litigation. The defendants prevailed on summary judgment. True, the district court found that the first factor was neutral, finding no bad faith by the Trustees. "The absence of bad faith is not dispositive." ***Starr v. Metro Systems,***

---

[2]The Trustees argue that the defendants lack authority to seek an award because another provision requires attorney's fees and costs for a judgment in favor of a benefit plan. *See* **29 U.S.C. § 1132(g)(2)**. On appeal, the Trustees contend that they obtained a "judgment" when the district court directed that the defendants comply with the audit. This court will not consider an argument raised for the first time on appeal. *See **Orr v. Wal-mart Stores, Inc.***, 297 F.3d 720, 725 (8th Cir. 2002).

-14-

*Inc.*, 461 F.3d 1036, 1041 (8th Cir. 2006) (awarding attorney's fees without finding bad faith).  *See also **McClelland v. Life Ins. Co. of N. Am.***, 679 F.3d 755, 762 (8th Cir. 2012) (finding district court did not abuse discretion by awarding attorney's fees without finding bad faith).  *Cf. **Eisenrich v. Minneapolis Retail Meat Cutters & Food Handlers Pension Plan***, 574 F.3d 644, 651-52 (8th Cir. 2009) (holding district court erred in relying heavily on an erroneous finding of bad faith).  The Trustees' claims did not rely on unsettled law, which might have given greater weight to the bad faith factor.  *See **Cont'l Assur. Co. v. Cedar Rapids Pediatric Clinic***, 957 F.2d 588, 594-95 (8th Cir 1992) (holding that where this circuit has not addressed a significant legal question, the absence of bad faith implicitly resolves three other factors).  Also, the district court determined that the fourth factor did not support an award, since the defendants do not seek to benefit the plan beneficiaries and participants.  In sum, the district court did not abuse its discretion in weighing the factors and making an award.

The amount of fees awarded must be reasonable.  *See **Geissal v. Moore Med. Corp.***, 338 F.3d 926, 935 (8th Cir. 2003).  Courts may calculate fees using the lodestar method, which involves multiplying the number of hours reasonably expended by the reasonable hourly rates.  ***Fish v. St. Cloud State Univ.***, 295 F.3d 849, 851 (8th Cir. 2002).  Courts consider factors such as time, skill, and labor required; customary fees; the amount involved and the results obtained; and the experience, reputation, and ability of the attorneys.  *See **Hensley v. Eckerhart***, 461 U.S. 424, 430 n.3 (1983).

Contrary to the Trustees' arguments, the district court properly relied on its familiarity with the case and exhibits from the parties when determining the amount to award.  *See **Fish***, 295 F.3d at 852.  Examining billing rates, the court found that the defendants' firm billed tasks to partners that associates could have performed.  *See **id.*** at 851-52.  The court also found the billing rate high, given the size of the firm, simplicity of the tasks, and prevailing market rates.  *See **McDowell v. Price***, 731

F.3d 775, 784 (8th Cir. 2013). Some claimed hours were duplicative, some tasks described too generally. *See Fish*, 295 F.3d at 851-52. The district court did not abuse its discretion in considering these factors and reducing the award accordingly. *See id.*; *McDowell*, 731 F.3d at 784.

The Trustees argue that the district court erred by awarding fees for an issue that the defendants lost—the order directing them to comply with the audit. The Trustees cite cases from other circuits awarding fees to a "prevailing party" under other fee-shifting statutes. *See Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 768 (5th Cir. 1996); *Duckworth v. Whisenant*, 97 F.3d 1393, 1397 (11th Cir. 1996). However, ERISA uses a different standard, requiring only "some degree of success on the merits." *Hardt*, 560 U.S. at 245, 252.

Even under the "prevailing party" standard, fees are not limited to successful claims unless "the plaintiff's claims are based on different facts and legal theories, and the plaintiff has prevailed on only some of those claims." *Texas State Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 79, 789 (1989). *See also Lowry ex rel. Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 765 (8th Cir. 2008). In such situations, "the congressional intent to limit fee awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Garland*, 489 U.S. at 789. However, when moving for summary judgment on the audit, the Trustees argued the same vicarious liability theories and facts as for their claims for unpaid contributions by Charps's affiliates. "[W]here the plaintiff's claims arise out of a common core of facts, and involve related legal theories . . . the most critical factor is the degree of success obtained." *Id.* In such cases, a district court should use its discretion to arrive at a reasonable fee award, "either by attempting to identify specific hours that should be eliminated or simply by reducing the award to account for the limited success." *Id.* at 789-90. Time spent defending against the motion for the audit may have contributed to later arguments relying on the same legal theories

-16-

and facts for claims where the defendants prevailed. Therefore, even if the "prevailing party" standard for successful claims applies, the district court did not abuse its discretion by reducing the award to account for the defendants' limited success. *See id.* at 790.

The Trustees also contend that the district court erred in awarding fees for matters unrelated to this case. The court may award fees only for claims under ERISA, unless it relies on another fee-shifting statute or rule. *See generally* **29 U.S.C. § 1132(g)**. The Trustees have not shown that the district court abused its discretion in determining that fees were for matters related to this case.

## B.

As for costs, the district court considered the records that the parties provided. Once the clerk taxed costs, the Trustees bore the burden to show that the award was inequitable under the circumstances. *See* **Concord Boat Corp. v. Brunswick Corp.**, 309 F.3d 494, 498 (8th Cir. 2002).

ERISA does not define which expenses are recoverable as costs. *See* **29 U.S.C. § 1132(g)**. The Trustees correctly say that costs awarded under ERISA are limited to expenses in 28 U.S.C. § 1821 and § 1920. "[A]bsent explicit statutory or contractual authorization for the taxation" of an expense as costs, "federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." **Crawford Fitting Co. v. J. T. Gibbons, Inc.**, 482 U.S. 437, 445 (1987). *See* **Neosho R-V Sch. Dist. v. Clark**, 315 F.3d 1022, 1031 (8th Cir. 2003) (holding that costs awarded under IDEA are limited by § 1920 because IDEA does not define items recoverable as costs). *See generally* **Agredano v. Mut. of Omaha Companies**, 75 F.3d 541, 544 (9th Cir. 1996) (addressing costs under ERISA); **Holland v. Valhi Inc.**, 22 F.3d 968, 979 (10th Cir. 1994) (same); **Cook Children's Med. Ctr. v. New England PPO Plan of Gen. Consol. Mgmt. Inc.**, 491 F.3d 266, 277 (5th Cir. 2007) (same).

The district court abused its discretion by awarding costs that were not taxable under 28 U.S.C. § 1920. Postage and delivery costs are not taxable. *See* **28 U.S.C. §§ 1920, 1821**; *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 889 (8th Cir. 2006). Taxing of expert fees is strictly limited. *See* **28 U.S.C. §§ 1920, 1821**; *Orduno v. Pietrzak*, 932 F.3d 710, 720 (8th Cir. 2019).

Some costs disputed by the Trustees are taxable under 28 U.S.C. § 1920. Discovery-related copying is taxable. *Stanley v. Cottrell, Inc.*, 784 F.3d 454, 467 (8th Cir. 2015). Depositions are taxable when necessarily obtained for use in a case, even if not introduced at trial. *Marmo v. Tyson Fresh Meats,* **Inc.**, 457 F.3d 748, 762 (8th Cir. 2006); *Slagenweit v. Slagenweit*, 63 F.3d 719, 721 (8th Cir. 1995). Although parties may allocate costs by agreement, the Trustees do not provide evidence of an enforceable contract. *See* **Hinz v. Neuroscience, Inc.**, 538 F.3d 979, 987 (8th Cir. 2008).

Some expenses that the district court awarded as "costs" might be awarded as attorney's fees if they are separately billed under the prevailing practice in the local community. *See* **Missouri v. Jenkins**, 491 U.S. 274, 287 n.9 (1989) (allowing compensation for attorney's fees under 42 U.S.C. §1988). *See also* **Sturgill v. United Parcel Serv., Inc.**, 512 F.3d 1024, 1036 (8th Cir. 2008) (recharacterizing nontaxable costs as attorney's fees awarded under Title VII); **Trustees of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.**, 460 F.3d 1253, 1259 (9th Cir. 2006) (recharacterizing nontaxable costs as attorney's fees under ERISA); **Evans v. Books-A-Million**, 762 F.3d 1288, 1299 (11th Cir. 2014) (same). Litigation expenses may be included in attorney's fees. **Ludlow v. BNSF Ry. Co.**, 788 F.3d 794, 804 (8th Cir. 2015). Attorney travel expenses are also recoverable as attorney's fees. **Sturgill**, 512 F.3d at 1036; **Ludlow**, 788 F.3d at 803-04. Postage and delivery fees may be attorney's fees if normally charged to clients. **Pinkham v. Camex, Inc.**, 84 F.3d 292, 294-95 (8th Cir. 1996). However, expert witness fees are generally not part of attorney's fees. *See* **W. Virginia Univ. Hosps., Inc. v. Casey**, 499 U.S. 83, 96 (1991).

*See also* **Neosho R-V Sch. Dist.**, 315 F.3d at 1032-33 (holding that an award of attorney's fees and costs under IDEA does not include expert witness fees).

C.

On remand, the district court should award costs that are taxable under 28 U.S.C. § 1821 and § 1920.  For nontaxable costs, the court may determine whether they may be awarded as attorney's fees.

* * * * * * *

The judgment in 18-3007 is affirmed.  The judgment in 19-1206 is reversed and remanded for proceedings in accordance with this opinion.

_____