# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-2146

_____

InfoDeli, LLC, a Missouri LLC; Breht C. Burri

*Plaintiffs - Appellants*

v.

Western Robidoux, Inc., a Missouri corporation; Engage Mobile Solutions, LLC

*Defendants - Appellees*

Matthew Barksdale

*Defendant*

CEVA Animal Health, LLC; Shane Fairchild; Boehringer Ingelheim Vetmedica, Inc.; Peter Burri; Brian P. Burri; Cindy Burri

*Defendants - Appellees*

Connie Burri; Elizabeth Corbin; Sai Chow; Antonio Love; Darrin Clawson; Nathan Haley; James Robertson

*Defendants*

_____

Information Dignity Alliance

*Amicus on Behalf of Appellant(s)*

_____

No. 20-2256

_____

InfoDeli, LLC, a Missouri LLC; Breht C. Burri

*Plaintiffs - Appellees*

v.

Western Robidoux, Inc., a Missouri corporation

*Defendant - Appellant*

Engage Mobile Solutions, LLC; Matthew Barksdale; CEVA Animal Health, LLC; Shane Fairchild; Boehringer Ingelheim Vetmedica, Inc.; Peter Burri; Brian P. Burri; Cindy Burri; Connie Burri; Elizabeth Corbin; Sai Chow; Antonio Love; Darrin Clawson; Nathan Haley; James Robertson

*Defendant*s

_____

Information Dignity Alliance

*Amicus on Behalf of Appellee(s)*

_____

No. 23-2545

_____

InfoDeli, LLC, a Missouri LLC; Breht C. Burri

*Plaintiffs - Appellants*

v.

Western Robidoux, Inc., a Missouri corporation; Engage Mobile Solutions, LLC

*Defendants - Appellees*

Matthew Barksdale

*Defendant*

CEVA Animal Health, LLC; Shane Fairchild; Boehringer Ingelheim Vetmedica, Inc.; Peter Burri; Brian P. Burri; Cindy Burri

*Defendants - Appellees*

Connie Burri; Elizabeth Corbin; Sai Chow; Antonio Love; Darrin Clawson; Nathan Haley; James Robertson

*Defendant*s

———————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

———————

Submitted: September 26, 2024
Filed: May 5, 2025

———————

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.

———————

KELLY, Circuit Judge.

This consolidated appeal stems from a conflict involving a family and its businesses that has now been litigated in both state and federal courts. See TooBaRoo, LLC v. W. Robidoux, Inc., 614 S.W.3d 29 (Mo. Ct. App. 2020); TooBaRoo, LLC v. W. Robidoux, Inc., No. 23-3323, -- F.4th -- (8th Cir. May 5, 2025). The instant dispute comprises claims of copyright infringement, tortious interference, and Missouri Computer Tampering Act (MCTA) violations, as well as sanctions, attorney's fees, and costs. The district court[1] granted defendants' motion for summary judgment on the copyright infringement claim. The remaining claims were dismissed or tried before a jury, which found in favor of defendants. The district court then granted in part and denied in part plaintiffs' sanctions motion, and

---

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

granted defendants' motion for attorney's fees and costs. Plaintiffs appeal. We affirm.

## I.

Plaintiffs are Breht Burri and his technology business, InfoDeli, LLC (collectively, InfoDeli). Defendants include Breht's mother, Connie Burri; his brothers, Brian and Peter Burri; and his sister-in-law, Cindy Burri. Western Roubidoux, Inc. (WRI), CEVA Animal Health, LLC (CEVA), Boehringer Ingelheim Vetmedica, Inc. (BIVI), and Engage Mobile Solutions, Inc. (Engage) are also named as defendants.[2]

Breht is the sole member of InfoDeli, formerly TooBaRoo, which creates webstores and internet software systems for commercial clients. WRI is a commercial printing and fulfillment company owned by Connie, Breht, Brian, Peter, and Cindy. WRI prints and distributes marketing materials for other businesses. In 2009, InfoDeli and WRI formed a joint venture wherein InfoDeli agreed to create webstore platforms for clients, and WRI agreed to provide printing and fulfillment services to those clients.

Two of the joint venture's clients were BIVI and CEVA, companies that provide animal health products to businesses and pet owners. Consistent with the joint venture agreement, InfoDeli created webstores for BIVI and CEVA, which the companies' sales and marketing staff used to order promotional materials for clients. WRI would then receive and fulfill all of the webstore orders placed by BIVI and CEVA staff. InfoDeli also created a separate rebate platform for CEVA called the Vectra Rebate webstore. This platform allowed CEVA's sales and marketing staff to order promotional coupons to send to customers such as vet clinics and pet

---

[2]Collectively, we refer to all individual and corporate defendants as Defendants. When referring to individual Burri family members, we use first names.

-4-

owners. Customers could then access this platform to redeem the coupons. WRI would also receive and fulfill orders placed through the Vectra Rebate webstore.

Eventually, WRI and InfoDeli's relationship began to deteriorate. In early 2014, WRI hired Engage, another company that creates webstores and internet software for commercial clients, to build webstores for CEVA and BIVI that would replace those created by InfoDeli. Unlike InfoDeli's versions of the BIVI and CEVA webstores, which Breht created using proprietary software, Engage used third-party, open-source e-commerce software to create the new webstores. To assist in populating the new websites, WRI provided Engage with data and images from BIVI's and CEVA's InfoDeli-created webstores.

WRI did not inform InfoDeli that it was working with Engage. Then, in March 2014, soon after hiring Engage, WRI terminated its joint venture agreement with InfoDeli. InfoDeli then brought this lawsuit against Defendants, alleging, among other claims, that Defendants infringed on eight copyright registrations by copying various elements of the BIVI, CEVA, and Vectra Rebate webstores. In addition to copyright infringement, and relevant to this appeal, InfoDeli alleged violation of the MCTA and tortious interference.[3] CEVA counterclaimed, alleging conversion, as did WRI, alleging tortious interference.

Defendants moved for summary judgment on InfoDeli's copyright infringement claims, which the district court granted, and InfoDeli moved for summary judgment on CEVA's and WRI's counterclaims, which the district court denied. The remaining claims and counterclaims proceeded to trial where a jury found in favor of Defendants. Before and after the jury verdict, InfoDeli moved for judgment as a matter of law under Rules 50(a) and (b) of the Federal Rules of Civil Procedure. InfoDeli also moved for a new trial and relief from judgment under Rules 59 and 60. After the jury verdict, but before the district court ruled on the posttrial

---

[3]Among others, the complaint also included a claim that WRI, BIVI, and CEVA breached the InfoDeli platforms' terms of use.

motions, InfoDeli appealed the district court's grant of summary judgment to Defendants on its copyright infringement claim, denial of summary judgment to InfoDeli on Defendants' counterclaims, and denial of InfoDeli's pre-verdict motion for judgment as a matter of law. A panel of this court concluded it lacked jurisdiction over InfoDeli's appeal and held the appeal in abeyance. Afterward, the district court denied InfoDeli's posttrial motions.

InfoDeli now renews its earlier appeal. InfoDeli also appeals the district court's denial of its motions for judgment as a matter of law and for a new trial, as well as the court's orders on sanctions and attorney's fees.

II.

We begin with InfoDeli's copyright infringement claims. The district court granted summary judgment to Defendants, concluding that they did not infringe on any copyrighted elements of the BIVI, CEVA, and Vectra Rebate webstores (collectively, Platforms). "We review a grant of summary judgment *de novo*, affirming only if 'the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.'" Warner Bros. Ent., Inc. v. X One X Prods., 644 F.3d 584, 591 (8th Cir. 2011) (quoting Schoolhouse, Inc. v. Anderson, 275 F.3d 726, 728 (8th Cir. 2002)).

Before addressing InfoDeli's arguments for reversal, it is helpful to define some of the relevant terms. In copyright law, "verbatim copying" is synonymous with the term "literal copying," and both mean word-for-word "copying of original expression." Oracle Am., Inc. v. Google Inc., 750 F.3d 1339, 1356 (Fed. Cir. 2014). "Nonliteral copying," on the other hand, is copying that "is 'paraphrased or loosely paraphrased rather than word for word.'" Id. (quoting Lotus Dev. Corp. v. Borland Int'l, 49 F.3d 807, 814 (1st Cir. 1995)).

These terms—literal (or verbatim) copying and nonliteral copying—are distinct from a computer program's "literal" and "nonliteral" *elements*, which may be protected in copyright. See id. One literal element of a computer program is "source code." Id. at 1355 ("The literal elements of a computer program are the source code and object code."). "Courts have defined source code as 'the spelled-out program commands that humans can read.'" Id. (quoting Lexmark Int'l, Inc. v. Static Control Components, Inc., 387 F.3d 522, 533 (6th Cir. 2004)). Put another way, "'source code' is the program as initially written in the programming language being used." Action Tapes, Inc. v. Mattson, 462 F.3d 1010, 1013 (8th Cir. 2006).[4] In contrast, "non-literal [elements] of a computer program include, among other things, the program's sequence, structure, and organization, as well as the program's user interface." Oracle, 750 F.3d at 1355–56.

The district court found that the Platforms' nonliteral elements were not entitled to copyright protection, and on appeal, InfoDeli does not challenge this determination—at least as to each of the nonliteral elements considered alone. Instead, InfoDeli contends that the district court erred because it "ignored the sum total" and "over-dissected certain copied portions of the Platforms without considering the protectability of what was copied as a whole." But InfoDeli does not identify how the "sum total" is protected, other than to say that each Platform's individual parts are interrelated. Even accepting that as true, InfoDeli's argument on appeal lacks any explanation as to how the interrelationship among the non-protected parts of the Platforms makes them protected "as a whole."

Citing Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340 (1991), InfoDeli also asserts that its Platforms "as a whole" are protected under copyright law as "compilations," regardless of whether each individual nonliteral element was protected. See Feist, 499 U.S. at 348 (finding that "[f]actual

---

[4]One example of source code is HTML code, a programming language that, when written, "generates the visual appearance of a website." ACTONet, Ltd. v. Allou Health & Beauty Care, 219 F.3d 836, 847 (8th Cir. 2000).

compilations . . . may possess the requisite originality" for copyright protection). "To qualify for copyright protection, a work must be original . . . . mean[ing] only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." Id. at 345.

Assuming for these purposes that the Platforms qualify as "compilations,"[5] the works still must show—even when taken as a whole—at least "some minimal degree of creativity" in the "manner in which the compiler has selected and arranged the" individual elements or facts. Id. at 345, 349. InfoDeli asserts that its Platforms' databases were protected compilations. But it does not explain why that is so. On appeal, InfoDeli argues that a compiler "typically" makes choices regarding selection and arrangement, but it fails to describe how *its* databases demonstrate the requisite creativity necessary for a compilation to merit copyright protection. InfoDeli's conclusory statements are generally accurate descriptions of the law, but they are insufficient to show the requisite originality to establish copyright protection of its databases as compilations. See Butler v. Crittenden County, 708 F.3d 1044, 1051 (8th Cir. 2013) (declining to consider cursory argument unsupported by facts).

InfoDeli also contends that the district court erred because it "overlooked" the Defendants' "verbatim copying of InfoDeli's [source] code," that is, some of the Platforms' literal elements. InfoDeli's second amended complaint expressly alleged copyright infringement of the Platforms' nonliteral elements. It did not allege

---

[5]In copyright, "[a] 'compilation' is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship . . . . [and] includes collective works." 17 U.S.C. § 101.

infringement of the literal elements,[6] or "code." The district court did not err in addressing only the claims raised in the operative complaint.

Finally, InfoDeli argues that, regarding the BIVI webstore, the district court erred when it limited its copyright analysis to only the elements identified by InfoDeli's expert, Jason Eaddy. Citing Compulife Software, Inc. v. Newman, 959 F.3d 1288, 1303 (11th Cir. 2020), InfoDeli argues that Defendants bore the burden to prove which elements—including those beyond Eaddy's list—were not copyright protected. But, contrary to InfoDeli's argument, Compulife clarified that "[w]hen . . . [a] plaintiff provides a list of [elements] it believes to be protectable, he implicitly concedes that elements not included on the list are unprotectable." Id. at 1306 n.8; see also MiTek Holdings, Inc. v. Arce Eng'g Co., 89 F.3d 1548, 1555 (11th Cir. 1996) ("After submitting a specification of the elements that it deemed to be protectable, [a plaintiff] cannot now argue that the district court failed to abstract further the elements of its own designation of protectable features."). InfoDeli provides no other support for its burden-shifting argument, and we have found none. The district court did not err when it relied on InfoDeli's own expert to determine which of the BIVI platform's elements were at issue for purposes of its copyright infringement analysis.

We affirm the district court's grant of summary judgment to Defendants on InfoDeli's copyright infringement claim.[7]

---

[6]To the extent that InfoDeli relies on passing references in its opposition to summary judgment to say otherwise, such reliance is insufficient. New claims are properly raised through amended complaints, not opposition briefs. See Fed. R. Civ. P. 15(a); see also Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

[7]We need not address any alternative basis the district court relied on in granting summary judgment to Defendants.

III.

Next, InfoDeli appeals the district court's denial of its motion for summary judgment on CEVA's conversion counterclaim. Ordinarily, "[w]e will not review a district court's denial of a motion for summary judgment after a trial on the merits." EEOC v. Sw. Bell Tel., L.P., 550 F.3d 704, 708 (8th Cir. 2008). Instead, parties denied summary judgment should seek redress "through subsequent motions for judgment as a matter of law and appellate review of those motions if they were denied." N.Y. Marine & Gen. Ins. Co. v. Cont'l Cement Co., LLC, 761 F.3d 830, 838 (8th Cir. 2014) (quoting White Consol. Indus., Inc. v. McGill Mfg. Co., 165 F.3d 1185, 1189 (8th Cir. 1999)). One exception to this general rule is preliminary legal issues, like statutes of limitations. Id. at 838. On appeal, InfoDeli argues that CEVA failed to claim ownership over its webstore's data within the Copyright Act's statute of limitations. But the district court found that CEVA's counterclaim was based on its possessory rights to consumer *data*—not on any right to the Platforms themselves— and that the claim was unrelated to InfoDeli's copyright ownership allegations, which had been dismissed. Instead, CEVA's counterclaim was based on Missouri state law, and CEVA brought its conversion counterclaim within Missouri's five-year statute of limitations. See Mo. Rev. Stat. § 516.120(4) (five-year statute of limitations for tort claims). InfoDeli has failed to show reversible error.[8]

---

[8]InfoDeli mentions in passing rulings the district court made before and during the trial, but it fails to develop an argument as to any of them. See Hortica-Florists' Mut. Ins. Co. v. Pittman Nursery Corp., 729 F.3d 846, 857 n.12 (8th Cir. 2013) (failing to adequately develop an argument in support of alleged error amounts to abandonment); Rotskoff v. Cooley, 438 F.3d 852, 854 (8th Cir. 2006) (finding waiver where party failed to develop argument in his briefs pursuant to Federal Rule of Appellate Procedure 28(a)(9)(A)).

IV.

InfoDeli also appeals the district court's denial of its posttrial motions for judgment as a matter of law and a new trial under Federal Rules of Civil Procedure 50(b) and 59. The district court denied these motions as untimely. See Fed. R. Civ. P. 50(b) ("No later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law . . . ."); Fed. R. Civ. P. 59(b) ("A motion for a new trial must be filed no later than 28 days after the entry of judgment.").

This case has a long history. InfoDeli initially filed a notice of appeal after trial but before the district court had ruled on the posttrial motions. We determined that the appeal was premature. Because we lacked jurisdiction, we held the appeal in abeyance "pending further rulings of the district court" and remanded the case.

InfoDeli first argues that the district court's order denying the posttrial motions as untimely violated the mandate rule—a rule that requires courts "to obey strictly an appellate mandate" on remand. Bethea v. Levi Strauss & Co., 916 F.2d 453, 456 (8th Cir. 1990); see also Williams v. Martorello, 59 F.4th 68, 76–77 (4th Cir. 2023) ("[Courts of appeal] review whether a post-mandate decision of the district court violated the mandate rule de novo."). According to InfoDeli, our order remanding the case was an implicit ruling that its posttrial motions were timely, and the district court's ruling that they were *un*timely violated our mandate. But we said nothing in our remand order about the timeliness of any motions still pending in the district court. On remand, the district court simply ruled on InfoDeli's posttrial motions and did nothing that violated the mandate rule.

Alternatively, InfoDeli contends that its posttrial motions were timely because final judgment was not entered until the district court resolved one remaining claim—InfoDeli's claim for tortious interference against the Burri defendants—approximately one year after the trial verdict. According to InfoDeli, it therefore filed its posttrial motions *before* final judgment, and thus the motions could not have

-11-

been untimely. But InfoDeli's argument is contradicted by the record. The district court entered an order in February 2016 dismissing the tortious interference claim against two defendants. And before trial in March 2020, it dismissed the same claim against the remaining defendants on the same grounds, at which time InfoDeli's counsel said: "I understand the court's ruling and we accept it."[9] InfoDeli also argues that the district court should have accepted its untimely, corrected motions *nunc pro tunc*. InfoDeli relies on Rule 83(a)(2) to argue that its failure to comply with the local rules was "nonwillful." Fed. R. Civ. P. 83(a)(2) ("A local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply."). But InfoDeli failed to raise this argument before the district court despite multiple opportunities to do so, and despite being on notice that timeliness was at issue. Accordingly, we decline to consider it. See Perry v. Precythe, 121 F.4th 711, 716 (8th Cir. 2024) (describing our "ordinary practice" of not considering an argument raised for the first time on appeal).

InfoDeli further asserts there was insufficient evidence to support the jury's verdict on WRI's tortious interference counterclaim, and alternatively, that the counterclaim is barred by the economic loss doctrine. The district court dismissed both arguments as untimely under Rules 50(b) and 59(b), and we find no error in that decision. See Fed. R. Civ. P. 50(b), 59(b); see also Ludlow v. BNSF Ry. Co., 788 F.3d 794, 800 (8th Cir. 2015) ("Without question, when the verdict loser fails to file a Rule 50(b) motion renewing its pre-verdict Rule 50(a) JMOL motion, 'there [is] no basis for review of [the party's] sufficiency of the evidence challenge in the Court of Appeals.'" (alterations in original) (quoting EEOC, 550 F.3d at 708)).

We affirm the district court's denial of InfoDeli's Rule 50 and 59 motions as untimely.

---

[9]InfoDeli also contends that the district court violated Rule 56(f) by sua sponte granting the remaining defendants summary judgment on this claim. But the district court resolved this claim by dismissing it, not by granting summary judgment, so Rule 56(f) is inapplicable.

We turn next to sanctions. "The district court has broad discretion in imposing sanctions on parties for failing to comply with discovery orders," and we review such sanctions for abuse of discretion. United States v. Amaya, 750 F.3d 721, 727 (8th Cir. 2014) (quoting United States v. Davis, 244 F.3d 666, 670 (8th Cir. 2001)). Factual findings are reviewed for clear error. Wagner v. Gallup, Inc., 788 F.3d 877, 882 (8th Cir. 2015).

Here, the district court found that Engage caused delays in the discovery process warranting sanctions under Rule 37(b). See Fed. R. Civ. P. 37(b) (providing for sanctions for failing to comply with a court order). According to the district court, "Engage purposefully 'slow-played' its responses to the Court's discovery orders, with knowledge that delaying production of certain [electronically stored information] would operate to conceptually distance the Engage project from Plaintiffs' Platforms." And the court was "satisfied that Engage's delays in producing discovery were undertaken in bad faith and prejudiced Plaintiffs in prosecuting their claims." It declined, however, to sanction any of the defendants for spoliation under Rule 37(e). Fed. R. Civ. P. 37(e) (allowing the district court to order curative measures if, among other things, "a party failed to take reasonable steps to preserve [electronically stored information]").

First, InfoDeli argues that the dollar amount of the Rule 37(b) sanctions was inadequate. After deciding sanctions were appropriate, the district court directed InfoDeli to submit an itemized accounting of the costs and fees attributable to Engage's discovery violations. In response, InfoDeli sought reimbursement for expert fees and attorney's fees. As to the expert fees, the district court found that InfoDeli submitted invoices for work that was "not readily attributable to Engage's discovery delays." Instead, the district court found that InfoDeli would have incurred those expenses regardless of Engage's delays, and it declined to assess them to Engage. As to the attorney's fees, the district court had some difficulty discerning the billing records to determine which fees were incurred as a result of the discovery

violations. Ultimately, however, it identified those fees that were "reasonably expended on tasks related to Engage's failure to comply with Court orders" and included those in the sanctions award. The district court was intimately familiar with the extensive record as well as the conduct that gave rise to the sanctions order, and we see no clear error in the district court's calculation of an appropriate sanction.

Second, InfoDeli argues the district court abused its discretion by not sanctioning all Defendants under Rule 37(e), because they failed to preserve electronically stored information. According to InfoDeli, Defendants spoliated electronic "databases," thereby destroying evidence necessary for "'a side-by-side comparison' of the infringed work and accused work." Yet InfoDeli represented to the district court that Engage had "produced all of the databases," which contained the evidence InfoDeli sought. And while the district court imposed Rule 37(b) sanctions against Engage for discovery delay, it expressly declined to find that Engage had failed to take reasonable steps to preserve electronically stored information as required for curative action under Rule 37(e). As to the other defendants, the district court found that none had "repeatedly failed to timely comply with the Court's discovery orders," and InfoDeli does not meaningfully contest this finding on appeal. Thus, InfoDeli has failed to convince us that the district court abused its discretion regarding the imposition of Rule 37(e) sanctions.

VI.

InfoDeli's last argument challenges the award of attorney's fees and costs to Defendants.[10] See 17 U.S.C. § 505. The Copyright Act authorizes attorney's fees to "encourage the types of lawsuits that promote [the Act's] purpose[]," which is, broadly, "enriching the general public through access to creative works." Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 204 (2016) (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 527 (1994)). The Act achieves its purpose "by striking a balance

_____

[10]InfoDeli does not contest that Defendants were the prevailing parties. See 17 U.S.C. § 505.

-14-

between two subsidiary aims: encouraging and rewarding authors' creations while also enabling others to build on that work." Id.

"The Copyright Act itself makes clear that the decision [to award or deny attorney fees] lies within the [district] court's discretion . . . ." Designworks Homes, Inc. v. Thomson Sailors Homes, L.L.C., 9 F.4th 961, 965 (8th Cir. 2021); see also Kirtsaeng, 579 U.S. at 203 (noting "that § 505 grants courts wide latitude to award attorney's fees based on the totality of the circumstances"). Fees may not be awarded "as a matter of course." Kirtsaeng, 579 U.S. at 202 (quoting Fogerty, 510 U.S. at 533). Rather, the "court must make a more particularized, case-by-case assessment," placing "substantial weight" on the "objective reasonableness" of the loser's litigation position, while nonetheless also crediting "a range of considerations beyond the reasonableness of the litigating positions." Id. at 202, 207–08. In other words, "objective reasonableness" is "only an important factor . . . not the controlling one." Id. at 208.

Here, the district court found that InfoDeli's copyright claims, while unsuccessful, were not frivolous or objectively unreasonable. But the court expressed concern that despite having alleged "broad copyright infringement claims," InfoDeli was unable to support its claims with evidence. After years of litigation and extensive discovery, InfoDeli failed to convince the district court that there was a genuine dispute of material fact as to whether Defendants had copied elements of InfoDeli's Platforms that were protectable in copyright. In light of these findings, the court expressed concern about fostering creative pursuits while deterring lawsuits "arising from others' use of aspects of existing creative works which are not protectable in copyright as a matter of law." This is a relevant factor for the district court's consideration. See id. at 209.

In addition to the "objective unreasonableness [] both in the factual and in the legal components of the case," a district court may also consider "motivation" when deciding whether to assess fees. Fogerty, 510 U.S. at 534 n.19. Though it "decline[d] to explicitly find InfoDeli's claims were improperly motivated," the district court

-15-

noted that "the family dynamics underlying the parties' claims impacted the overall tenor of th[e] litigation." After having presided over the case "for almost six years," the court found this factor[11] played a part in how the case was litigated and thus was relevant in its decision to assess fees. Kirtsaeng reminds us that "discretion is rarely without limits." 579 U.S. at 203 (quoting Flight Attendants v. Zipes, 491 U.S. 754, 758 (1989)). But applying due deference to the district court who presided over these proceedings, we cannot say that it exceeded those limits here. Id. at 204.[12]

InfoDeli also argues that the district court abused its discretion in awarding costs to Defendants. "We review de novo the legal issues related to the award of costs and review the actual award for an abuse of discretion." Stanley v. Cottrell, Inc., 784 F.3d 454, 464 (8th Cir. 2015). The only issue before us[13] is InfoDeli's objection to costs for deposition transcripts that it asserts were never used in the case or "otherwise justified as necessary." See 28 U.S.C. § 1920(4) (permitting district court to tax "the costs of making copies of materials where the copies are necessarily obtained for use in the case"). The district court determined that the transcripts were

---

[11]InfoDeli calls this a "family-dynamics factor," but that misreads the district court's ruling. The court was concerned about the nature and tone of the years-long litigation, and we read its reference to "family-dynamics" as simply giving context to its observations. At one point in the litigation, for example, the district court admonished the parties for their "personalization of one another," "name calling," and "finger pointing." The court described their conduct as "distracting," leading it to be more "caught up with the bickering than [] with [] the legal arguments in the case."

[12]To the extent InfoDeli argues for the first time on appeal that the amount of attorney's fees awarded to Defendants was unreasonable, InfoDeli waived this argument by failing to raise it before the district court. See Designworks Homes, 9 F.4th at 965 n.3 (explaining that a party "may not challenge the size of [§ 505 attorney's fees] for the first time on appeal").

[13]We decline to address InfoDeli's additional arguments opposing costs, which are raised for the first time on appeal. See Designworks Homes, 9 F.4th at 965 n.3; see also Jackson v. Corr. Corp. of Am., 606 F. App'x 945, 953 (11th Cir. 2015) (per curiam).

"necessarily obtained for use in the case" because they "involved many parties in varying roles and many witnesses." <u>See</u> <u>Johnson Tr. v. Charps Welding</u>, 950 F.3d 510, 527 (8th Cir. 2020) ("Depositions are taxable when necessarily obtained for use in a case, even if not introduced at trial."). And the court found that Defendants' fee requests were "adequately substantiated by documentation." InfoDeli's conclusory argument alleging error fails to persuade us that the district court's assessment of transcript costs was an abuse of discretion.

## VII.

We affirm.[14]

_____

---

[14]Because we affirm, we need not address the issues raised in Defendants' cross-appeal.