# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 14-1498

———————————————

Dimple Jain

*Plaintiff - Appellant*

v.

CVS Pharmacy, Inc.

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

——————————

Submitted: January 13, 2015
Filed: March 4, 2015

——————————

Before LOKEN, MURPHY, and MELLOY, Circuit Judges.

——————————

MURPHY, Circuit Judge.

Dimple Jain, a woman of East Asian descent, worked as a staff pharmacist for CVS Pharmacy, Inc. and was promoted to head pharmacist at one of its stores. Seven months later, she was terminated. Jain sued CVS, claiming discrimination and retaliation in violation of the Missouri Human Rights Act. CVS moved for summary judgment which Jain opposed. She submitted a declaration from her husband stating that she had improved the ranking of her pharmacy in every performance metric.

After striking the declaration, the district court[1] granted summary judgment to CVS, and Jain appealed. We affirm.

CVS hired Jain as a staff pharmacist in 2006. She worked in that role until 2009 and claims that her coworkers and supervisors discriminated against her during that period. Staff pharmacists called her the "little Indian lady," and district manager Deone Petersen criticized her Indian clothing as unprofessional. Referring to her "bossy" attitude, pharmacy manager Bret Dobson remarked that "she was from India but might as well be from Germany." Despite these comments, Jain informed Petersen and her supervisor Amanda Deaner that she wanted to be promoted to head pharmacist, a position called the "pharmacist-in-charge" (PIC). She was offered the promotion after the PIC at Store 8578 was discharged for cursing at a customer. She accepted the offer but asked for permission to work a three day schedule. Supervisor Deaner agreed, and Jain began working as the PIC at Store 8578 on December 27, 2009.

In April 2010 Deaner learned that the store was struggling in numerous performance metrics. The Triple-S score, an objective measurement of service related competencies, was 83 out of a target score of 87. The Key Performance Measures (KPM) score, a composite of six different patient care initiatives, was 52 out of a target score of 90. And the Execution Scorecard, a measurement related to task completion, was only 36 percent. Deaner also learned that Jain had not been following company policies and that multiple complaints about the pharmacy had been filed. One complaint stated that the pharmacy was in "trouble" because Jain had been working only three days a week and had "no idea what is going on the other four days a week."

---

[1] The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

Deaner issued a performance action plan and began holding weekly engagement meetings to help Jain align performance goals and staff expectations. At a May 30, 2010 meeting, Jain was given a performance warning stating that she had not been supporting company programs or achieving results on either the Triple-S or KPM scores. It explained that Jain did not "hold her associates accountable for their performance," displayed a "negative attitude towards her team," and struggled to "maintain organization." The warning also included a corrective action plan, noting that "failure to improve performance may lead up to and include termination."

Problems continued. Jain was issued another warning on June 13, 2010, stating that she had "not changed the schedule to accommodate the increased service needs of the pharmacy," she had "closed the pharmacy [leaving 20 prescription] pages in the queue [and] 12 voice mails on the machine unchecked," and had not created "a productive relationship with the front store management team." Her recent performance scores fared no better. Her KPM score was 43, compared to an area average of 57, and her Triple-S score and Execution Scorecard were in the bottom quartile of all pharmacies. As a result of these scores, regional manager Greg Leiker conducted a loss prevention audit of the pharmacy. His report stated that he was "very concerned" with the pharmacy because drugs were "piling up in the back [and] bottles [were] scattered in pockets all over countertop areas." He concluded that the pharmacy was "leaving the door open for theft to occur." Another inspection one week later found that the pharmacy was "trashed" and its "overall condition [was] hard to get over."

On July 21, 2010 Deaner and Petersen met with Jain to discuss the failed audits and to terminate her employment. Jain sent a letter to the CVS Regional Business Office asking to be reinstated as a staff pharmacist. In a second letter, Jain asserted that she had not been "given the appropriate training to be a pharmacy manager," her performance goals had been "unattainable," and she had been "set up to fail." CVS upheld the termination decision and refused to reinstate her as a staff pharmacist.

Jain sued CVS in Missouri state court for discrimination and retaliation under the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. §§ 213.055, 213.070. CVS removed the action to the federal district court and moved for summary judgment. Jain opposed the motion with a declaration from her husband, Rajeev Jain, stating that an "arithmetic comparison" of Triple-S scores, KPM scores, and Execution Scorecards showed that the pharmacy had improved in every performance metric after Jain became PIC. The court struck the declaration and its exhibits because Mr. Jain "never worked for [CVS] and did not claim to have industry experience that would allow him to provide testimony analyzing and providing conclusions from [the attached] business records." The court then granted summary judgment to CVS. Jain appeals.

Jain first argues that the district court erred in striking her husband's declaration. District courts enjoy "wide discretion in ruling on the admissibility of proffered evidence," and such "rulings should only be overturned if there was a clear and prejudicial abuse of discretion." U.S. Salt, Inc. v. Broken Arrow, Inc., 563 F.3d 687, 689–90 (8th Cir. 2009). A declaration used to oppose a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the [declarant] is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Lay opinion testimony is admissible if the witness has "personal knowledge" or "perceptions based on industry experience." Allied Sys., Ltd. v. Teamsters Local 604, 304 F.3d 785, 792 (8th Cir. 2002). A declaration which does not satisfy these requirement may be stricken or disregarded. See McSpadden v. Mullins, 456 F.2d 428, 430 (8th Cir. 1972); see also Shaver v. Indep. Stave Co., 350 F.3d 716, 723 (8th Cir. 2003).

The declaration at issue here does not satisfy the rule's requirements. Although Mr. Jain states that he is "married to Jain" and that Jain had asked him to "review all the KPM reports, Triple-S reports, and Execution Scorecards produced by CVS in this case," his declaration does not state that he had firsthand knowledge or personal

-4-

experience analyzing CVS performance data. Cf. Warner Bros. Entm't, Inc. v. X One X Prods., 644 F.3d 584, 591–92 (8th Cir. 2011). Nor does it establish that he had sufficient industry experience to synthesize hundreds of pages of metric scores in order to compare the performance of other pharmacies to the performance of Jain's pharmacy before and after she became PIC. Because these complex calculations required more than basic mathematics, Mr. Jain's lack of personal knowledge and industry experience made him unqualified to offer lay testimony on the subject. See U.S. Salt, Inc., 563 F.3d at 690; see also James River Ins. Co. v. Rapid Funding, LLC, 658 F.3d 1207, 1214–15 (10th Cir. 2011). The district court thus did not abuse its broad discretion by striking the declaration. See U.S. Salt, Inc., 563 F.3d at 690.

To the extent Jain contends that the district court erred by "ignoring" the hundreds of business records attached to his declaration, the argument assumes that the court had an "affirmative obligation to plumb the records in order to find a genuine issue of material fact." Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996). The court had no such obligation. Id. A district court is not required to mine the "summary judgment record searching for nuggets of factual disputes to gild a party's arguments." Rodgers v. City of Des Moines, 435 F.3d 904, 908 (8th Cir. 2006). We find this especially true where as here, the materials consist of over 500 pages and contain thousands of data points. See Tolen v. Ashcroft, 377 F.3d 879, 883 n.3 (8th Cir. 2004). Without an admissible declaration interpreting the business records, the district court did not abuse its discretion by refusing to pour through them.

Jain also argues that the district court erred in granting summary judgment to CVS on her discrimination claim. We review a grant of summary judgment de novo, viewing all admissible evidence and drawing all reasonable inferences in favor of the nonmoving party. Baye v. Diocese of Rapid City, 630 F.3d 757, 759 (8th Cir. 2011). Summary judgment is proper when there is no genuine dispute of material fact and the prevailing party is entitled to judgment as a matter of law. Id.

-5-

The MHRA prohibits employers from discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment because of her race or national origin. See Mo. Rev. Stat. § 213.055(1)(a). These safeguards are not "identical to the federal standards and can offer greater discrimination protection." Daugherty v. City of Maryland Heights, 231 S.W.3d 814, 818–19 (Mo. 2007). Unlike Title VII of the Civil Rights Act of 1964, a MHRA discrimination claimant can avoid summary judgment by showing that her race or national origin was a contributing factor rather than a substantial factor in the employer's decision. Hill v. Ford Motor Co., 277 S.W.3d 659, 665 (Mo. 2009). Courts have defined a "contributing factor" as one that "contributed a share in anything or has a part in producing the effect." E.g., Holmes v. Kan. City Mo. Bd. of Police Comm'rs ex rel. Its Members, 364 S.W.3d 615, 627 (Mo. Ct. App. 2012).

Jain asserts that her race or national origin contributed to her termination because she was treated differently than Dobson, a white pharmacy manager who had a lower Triple-S score than her but who was not terminated after one failed audit. While the MHRA does not require Jain to prove that she was treated differently than a similarly situated employee, this is one way she could show her race or national origin contributed to her termination. Holmes, 364 S.W.3d at 627. Employees are similarly situated if they are accused of "similar conduct and are disciplined in different ways." Williams v. Trans State Airlines, Inc., 281 S.W.3d 854, 873 (Mo. Ct. App. 2009).

Dobson and Jain did not have similar manager performance issues. Although Dobson had a low Triple-S score and had failed an audit, Jain's problems were far more severe. All three of her scores were below average, and her performance evaluations raised additional concerns. A May 30, 2010 performance warning stated that she did not "hold her associates accountable for their performance," she continued to "display a negative attitude towards her team," she struggled to "maintain organization," and she did not follow "procedures on receiving controlled substances."

Another warning explained that she had not changed the schedule to accommodate increased service needs of the pharmacy, and she had failed to create a productive relationship with the front store management team. Given these issues, Jain was already on her "final warning" before she failed her first audit and the follow up inspection one week later. Her performance issues were thus far more serious than any concerns with Dobson. Since Dobson is not an appropriate comparator, we affirm the grant of summary judgment to CVS on the discrimination claim. Cf. Williams, 281 S.W.3d at 873–74.

Jain next contends that the district court erred in granting summary judgment to CVS on her retaliation claim. To establish retaliation under the MHRA, Jain must prove that she complained of discrimination, CVS took adverse action against her, and a causal relationship existed between her complaint and the adverse action. E.g., McCrainey v. Kan. City Mo. Sch. Dist., 337 S.W.3d 746, 753 (Mo. Ct. App. 2011). Jain argues that she complained of discrimination by reporting the pharmacist who had called her "little Indian lady" and the pharmacy manager who had said "she was Indian but might as well be from Germany." She also allegedly complained to Deaner about the district manager who had criticized her Indian clothing as unprofessional. Even if these comments were discriminatory, Jain cannot prove causation. All the complaints occurred in late 2009, but she was not terminated until July 21, 2010, almost one year later. With such a lengthy delay, "any casual nexus inference tends to evaporate." Shanklin v. Fitzgerald, 397 F.3d 596, 604 (8th Cir. 2005). Any remaining inference of causation loses significance since Jain was promoted to PIC after she made those complaints. Cf. Williams, 281 S.W.3d at 869.

Although Jain claims that her termination was the "ultimate expression of retaliation," she also suggests that CVS retaliated against her by assigning her to a less desirable store and by failing to provide her with improvement opportunities. We disagree. Jain not only requested a promotion to PIC, but she accepted the promotion at Store 8578, the only store which had such an opening. She received a more

prestigious title, better working hours, and a salary increase as a result of the promotion. Because the terms, conditions, and privileges of her employment improved from the promotion, she did not suffer an "adverse action" under the MHRA. See Rose City Oil Co. v. Missouri Comm'n on Human Rights, 832 S.W.2d 314, 317 (Mo. Ct. App. 1992). Assuming without deciding that failing to provide an employee with improvement opportunities can be an adverse action, the record shows that Jain received improvement opportunities after her promotion. Deaner set up weekly engagement meetings to help Jain improve her performance, and she provided Jain with two "coaching and counseling" forms which targeted areas for improvement. On this undisputed record, we cannot find that CVS retaliated against Jain by refusing to provide her with opportunities to improve.

Jain finally suggests that CVS retaliated against her by refusing her request to step down from PIC to her prior position as staff pharmacist. Although Jain refers to Sheila Lewis, another PIC who was reinstated as a staff pharmacist, Lewis is not a valid comparator. Jain was terminated due to her many performance problems as PIC; Lewis stepped down from PIC because of a death in her family and child care issues. Moreover, Lewis did not have similar performance issues as Jain. Lewis is thus not similarly situated to Jain. Cf. Williams, 281 S.W.3d at 873–74. Without additional evidence that her complaints contributed to the denial of her reinstatement request, Jain has failed to create a material dispute of fact on her retaliation claim, and we affirm the grant of summary judgment to CVS on that claim.

For these reasons, we affirm the judgment of the district court.

_____