# United States Court of Appeals

### For the Eighth Circuit

_____

No. 15-1052

_____

Clarence C. Cosby

*Plaintiff - Appellant*

v.

Steak N Shake

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 24, 2015
Filed: November 4, 2015

_____

Before MURPHY, MELLOY, and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

Clarence Cosby, a former employee at Steak N Shake (SNS), brought this action in state court under the Missouri Human Rights Act alleging race and disability discrimination, retaliation, and constructive discharge by SNS. After the case was

removed to the Eastern District of Missouri, the district court[1] granted summary judgment to SNS. Cosby now appeals the judgment dismissing his disability discrimination and constructive discharge claims. We affirm.

I.

On December 30, 2009 Cosby was hired as the general manager of an SNS store in St. Louis, Missouri. Cosby reported to district manager Thomas Pannullo who spoke to him several times in 2010 about performance issues, including unscheduled absences, failure to hold employees accountable, and a high employee turnover in his store resulting in understaffing. Cosby received a written warning on September 4, 2010 which identified those issues as well as other objective measures in which his store had been underperforming. On October 26 Cosby received another written warning which noted that he had missed a shift and had failed to complete a new product rollout. It also stated that Pannullo had "informed [Cosby] of [his] intention to take him out of the [general manager] position." While Cosby admits that he received and signed the warning, he claims that Pannullo told him that he would be demoted only if his store did not improve.

Pannullo and human resources manager Micky Pfeiffer testified that they met with Cosby on November 3, 2010 and told him that his demotion from general manager to store manager would take effect on November 17. Cosby claims that the meeting never took place although he admits that he signed a "performance deficiency letter" documenting his "poor performance as a general manager."

Beginning on November 8, 2010 Cosby failed to appear for nine days of scheduled shifts. On November 16 Cosby faxed a short term disability claim form to

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

the SNS benefits department. This form included Dr. Imran Christi's conclusion that Cosby was "unable to perform management or line staff duties" because he had major depression. Although Cosby claims that he had previously told Pannullo on November 8 that he had been diagnosed with depression, SNS contends that the first time it was informed about it was from his claim form. SNS exercised its discretion under its short term disability benefits plan and granted Cosby 60 days of leave, backdating his leave to November 8. While Cosby was on leave, his demotion from general manager to store manager was formalized on November 17, 2010 and entered in the SNS database on November 19.

On January 22, 2011 Cosby returned to work as a store manager. Although Cosby was assigned to work at a different store, Pannullo remained his district manager. Cosby continued to exhibit the same performance problems and received verbal and written warnings from supervisors throughout 2011. In August 2011 Pannullo learned that Cosby had grabbed a subordinate employee's arm during an argument and also that he had lost his driver's license. SNS policy subjects any "[m]anager [who] loses the ability to legally and safely drive a motor vehicle . . . to discipline up to and including termination."

On August 19, 2011 Pannullo and Pfeiffer met with Cosby to issue written warnings for losing his driver's license and for grabbing his subordinate's arm. Although Cosby had refused to sign his performance warnings, he has now admitted to the charges. After receiving the warnings, Cosby asked about his "future with the company," and Pfeiffer allegedly laughed at his question. Later, after Cosby informed Pannullo that he was thinking about resigning from his position as store manager, he claims Pannullo replied that "this" would continue if he "stayed." Cosby announced his resignation minutes later. Upon learning of Cosby's resignation Pfeiffer told an employee, "This is perfect!" When another employee later asked Pfeiffer whether he characterized Cosby's resignation to be a plus or minus Pfeiffer answered, "Is there such a thing as a HUGE plus? [Cosby] walked out [during the]

middle of [his] shift after Thom [Pannullo] and I wrote him up for a few issues. He has a pending EEOC case and his attorney probably said that we were retaliating against him."

Cosby subsequently filed this lawsuit against SNS in Missouri state court, raising claims for race and disability discrimination, retaliation, and constructive discharge under the Missouri Human Rights Act (MHRA). The case was removed to federal court by SNS which then moved for summary judgment on all claims. The district court granted the motion, concluding that neither race nor disability had been a contributing factor in the company's decision to demote Cosby, that SNS had not retaliated against him, and that SNS had not constructively discharged Cosby in violation of the MHRA. Cosby now appeals the dismissal of his disability discrimination and constructive discharge claims.

II.

We review a "district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences that can be drawn from the record." Minn. ex rel. N. Pac. Ctr., Inc. v. BNSF Ry. Co., 686 F.3d 567, 571 (8th Cir. 2012). Summary judgment is appropriate if no genuine dispute exists "as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We "may affirm the judgment on any basis supported by the record." Hohn v. BNSF Ry. Co., 707 F.3d 995, 1000 (8th Cir. 2013).

Cosby argues that the district court erred in dismissing his disability discrimination claim by not applying the MHRA "contributing factor" standard. A plaintiff alleging discrimination under the MHRA can avoid summary judgment by showing that his disability was a "contributing factor" rather than a substantial or determining factor in the adverse employment action. Jain v. CVS Pharmacy, Inc.,

779 F.3d 753, 759 (8th Cir. 2015). A "contributing factor" is one which "contributed a share" or had "a part in producing" the adverse action. Id. In applying that standard the district court concluded that Cosby had failed to create a triable issue "as to whether his disability was a contributing factor" in the alleged employment actions.

Cosby alternatively contends that the district court erred by concluding as a matter of law that his disability had not contributed to his demotion from general manager to store manager. Even viewing the facts in the light most favorable to Cosby, the record evidence does not show that Cosby's disability was a contributing factor in his demotion. SNS had no knowledge of his disability at the time it decided to demote him. Pannullo and Pfeiffer testified that they demoted Cosby during a meeting on November 3, 2010, five days before they learned about Cosby's diagnosis. At the November 3 meeting they informed Cosby that his demotion to store manager would take effect on November 17 because of his poor performance. While Pannullo claims that he told Cosby on October 26, 2010 that he would only be demoted if his store's performance did not improve, the record demonstrates that SNS made a definitive decision to demote Cosby before learning about his depression.

Cosby claims that this November 3 meeting never occurred, but an entry on Pfeiffer's calendar lists a November 3 meeting. Moreover, Cosby signed a letter stating that he had attended it. Thus, Cosby's subsequent unsupported assertion is not sufficient to create a genuine issue of material fact. Cf. Argenyi v. Creighton Univ., 703 F.3d 441, 446–47 (8th Cir. 2013). Although Cosby contends that he was not demoted until the date the demotion took effect, only the date he was informed of his demotion is relevant to the causation analysis. See Brown v. Diversified Distrib. Sys., LLC, 801 F.3d 901, No. 14-2685, 2015 WL 5166901, at *4–5 (8th Cir. Sept. 4, 2015). We conclude from this record that SNS demoted Cosby before it became aware of his diagnosis, and the district court thus did not err in granting summary judgment to SNS on Cosby's MHRA disability claim.

Cosby also argues that the district court erred by granting summary judgment on his constructive discharge claim since it viewed the evidence in a light favorable to SNS. Constructive discharge occurs "when an employer deliberately makes an employee's work environment so intolerable that resignation is the employee's only plausible alternative." Williams v. City of Kansas City, Mo., 223 F.3d 749, 753 (8th Cir. 2000). To prove a constructive discharge claim under the MHRA, an employee must show: "1) a reasonable person in the employee's situation would find the working conditions intolerable, and 2) the employer intended to force the employee to quit, or the employer could reasonably foresee that its actions would cause the employee to quit." Watson v. Heartland Health Labs., Inc., 790 F.3d 856, 863 (8th Cir. 2015) (internal quotation marks omitted). If an employee quits without giving the employer a reasonable chance to resolve his claim, there has been no constructive discharge. See id.

Viewing the facts in the light most favorable to Cosby, a reasonable person would not have found his work environment intolerable. Cosby relies on the two written performance warnings he received for conduct which he admits violated company policy, but the fact that an employee is disciplined in accordance with an employment policy is not enough to prove a constructive discharge claim under the MHRA. See, e.g., Tenkku v. Normandy Bank, 348 F.3d 737, 742–43 (8th Cir. 2003). Constructive discharge also requires "considerably more proof than an unpleasant and unprofessional environment." Duncan v. Gen. Motors Corp., 300 F.3d 928, 936 (8th Cir. 2002) (internal quotations marks omitted). Thus, while Pfeiffer laughed after Cosby asked about his future at SNS and Pannullo told Cosby that "this" would continue if he did not resign, this evidence was insufficient to create a material factual dispute about whether Cosby's work environment was intolerable. Since Pfeiffer's statements to other employees about Cosby's resignation occurred after he resigned they could not have been the cause of his resignation.

Moreover, Cosby did not give SNS a reasonable opportunity to resolve any problems he had with Pannullo or Pfeiffer. <u>See</u> <u>Watson</u>, 790 F.3d at 863. Cosby admits that he never complained about his supervisors during his employment and that he resigned immediately after they gave him the two written performance warnings on August 19, 2011. <u>See</u> <u>Duncan</u>, 300 F.3d at 936. We conclude from this record that the district court properly granted SNS summary judgment on Cosby's constructive discharge claim.

For these reasons the judgment of the district court is affirmed.

_____