NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JOHN BEAN TECHNOLOGIES CORPORATION,**
*Plaintiff-Appellant*

**v.**

**MORRIS & ASSOCIATES, INC.,**
*Defendant-Cross-Appellant*

---

2020-1035, 2020-1081

---

Appeals from the United States District Court for the Western District of Arkansas in No. 2:15-cv-02211-PKH, Judge P. K. Holmes III.

---

Decided:  September 24, 2020

---

GARY D. MARTS, JR., Wright, Lindsey & Jennings LLP, Little Rock, AR, argued for plaintiff-appellant.  Also represented by RICHARD BLAKELY GLASGOW.

NORMAN ANDREW CRAIN, Thomas Horstemeyer LLP, Atlanta, GA, argued for defendant-cross-appellant.  Also represented by DAN GRESHAM.

---

Before PROST, *Chief Judge*, LINN and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

John Bean Technologies Corp. brought this action against Morris & Associates, a rival in the business of supplying equipment to poultry processors. John Bean asserts that Morris engaged in false patent marking, false advertising, deceptive trade practices, and unfair competition with respect to Morris's IntraGrill auger chiller and Morris's COPE (Continuous Online Pathogen Eliminator) decontamination tanks. The key allegation of the complaint is the asserted falsity of Morris's representations, in product markings or advertisements, that the Morris products at issue are covered by three Morris patents, U.S. Patent Nos. 6,308,529, 7,470,173, and 7,588,489.

The district court granted summary judgment to Morris on John Bean's claims involving Morris's auger chiller on the ground that there was insufficient evidence to allow a reasonable factfinder to find that John Bean had been competitively injured by the challenged conduct. We affirm that ruling. The district court also granted summary judgment rejecting John Bean's claims involving Morris's decontamination tanks. We affirm that ruling as well.

I

John Bean and Morris manufacture and distribute poultry-processing equipment. Morris sells auger chillers named "IntraGrill" and decontamination tanks named "COPE." Morris marks its IntraGrill auger chiller as patented under the '529 patent. Morris marks its COPE products as patented under the '173 and '489 patents.

John Bean sells auger chillers named "FATCAT." John Bean's predecessor, Cooling & Applied Technology, Inc. (CAT), formerly sold decontamination tanks named "Kill-CAT," but those sales ceased after CAT agreed to an injunction, entered on December 19, 2011, that resolved a case

brought by Morris against CAT alleging infringement of the '173 patent. *See Morris & Assocs., Inc. v. Cooling & Applied Tech., Inc.*, No. 5:09-CV-00023-BR, ECF Nos. 135, 136 (E.D.N.C. June 29, 2011).[1] The 2011 injunction prohibits CAT, and now John Bean, "from making, using, offering to sell, selling, or importing into the United States its KillCAT pathogen reduction product" or "another product that infringes claims 1, 2, 5–10, 12, and 17 of the '173 patent." *Id.*

## A

### 1

The '529 patent, which is titled "Poultry Chiller with Open Auger," describes certain equipment for use in chilling poultry carcasses during processing for packaging for the retail market. '529 patent, col. 1, lines 8–13. The equipment at issue is an "auger chiller," which is an open-top, trough-like tank filled with cold water moving in one direction and a horizontally positioned auger—helix-shaped, with blades (also called "flights")—that moves carcasses through the water in the opposite direction. *Id.*, col. 1, lines 13–16; *id.*, col. 2, lines 52–57; *id.*, fig. 1; *see also* J.A. 1162; J.A. 1165. The auger's blades may contain openings (called water passages) to ease the water flow. '529 patent, Abstract; *id.*, col. 7, lines 24–31; *see* J.A. 1162–66.

Morris advertises its IntraGrill auger chiller as patented. For example, Morris's website states: "The patented IntraGrill flights in Morris & Associates auger chillers significantly enhance[] water flow . . . . This patented design provides a path for cold water to flow through the auger flights and into the bird pack." J.A. 1165; *see also*

---

[1]    John Bean acquired CAT after CAT filed the present case, and John Bean was then substituted as the plaintiff. We hereafter refer to CAT as John Bean.

J.A. 1162.  Morris's website also says: "In other systems, water circulates only around the shaft and through a narrow gap between the auger flights and the tank wall . . . , which causes water to back up, reduces flow rates and allows cold water to channel through the chiller without circulating around the individual birds."  J.A. 1166.

2

The '173 and '489 patents, which are titled "Post Chill Decontamination Tank," share a specification.  They describe a decontamination tank that cleans poultry during processing.  '173 patent, col. 2, lines 22–25.  The tank uses antimicrobial liquid and a paddle system—which may resemble a Ferris wheel—to move the birds through the antimicrobial liquid in the tank.  *Id.*, col. 5, lines 9–36.

The parties agree that, for purposes of this appeal, claim 7 of the '173 patent and claim 10 of the '489 patent are representative.  Claim 7 of the '173 patent recites:

A post chill decontamination tank assembly for treating and reducing microbial contamination of poultry carcasses received from a poultry chiller, the poultry chiller having a liquid capacity for chilling poultry carcasses and for containing a liquid solution of water and chemicals in a chemical concentration for reducing the contamination of the poultry carcasses in which the poultry carcasses were immersed as the poultry carcasses pass through the chiller, said post chill decontamination tank assembly comprising:

a tank having a smaller liquid capacity than the liquid capacity of the poultry chiller for holding an antimicrobial bearing liquid of different content than the liquid solution in the poultry chiller, for further reducing the microbial contamination on the surfaces of the poultry carcasses, said

> tank including upper opening means for receiving the poultry carcasses in said tank and for discharging the poultry carcasses from said tank,
>
> a plurality of paddles mounted in said tank about a central axis within said tank and extending at different angles about the central axis,
>
> power means connected to said plurality of paddles for revolving said plurality of paddles about the central axis in said tank and in sequence past the opening means of said tank for urging poultry carcasses in sequence about said tank and toward the opening means, and
>
> said paddles each being sloped toward the opening means when reaching the opening means for urging the carcasses out of said tank.

For present purposes, claim 10 of the '489 patent is materially identical to claim 7 of the '173 patent except that claim 10 has an additional limitation: "means connected to said tank for supplying to said tank an antimicrobial-bearing liquid of different antimicrobial content than the liquid in the poultry chiller."

Morris sells three COPE products (or groups of products) that it marks as patented under the '173 and '489 patents: (1) Pre-COPE; (2) COPE FC (or COPE Final); and (3) Parts COPE. J.A. 1262–63; J.A. 1265–66; J.A. 1268–69. Morris markets the several COPE products somewhat differently, advertising its Pre-COPE tanks for use before chilling, its COPE FC tanks for use after chilling, and its Parts COPE tanks for use with bird "parts," such as wings and breasts. *Id.* Despite the difference in marketing, however, the record evidence leaves no genuine dispute that all

the products can be used the same ways relevant to this case—most particularly, can be located just after the chiller in the processing line. *See, e.g.*, J.A. 3231; J.A. 3248; J.A. 3260.

Morris also advertises its COPE products as patented. For example, its website says: "The patented COPE delivers effective pathogen control for boneless and bone-in parts and products destined for mechanical separation." J.A. 1175. The website also states that the product is an "[e]xclusive, patented pathogen control innovation from Morris[.]" J.A. 1176.

B

About four years after the 2011 injunction was issued in the earlier action, John Bean sued Morris for false marking under 35 U.S.C. § 292(b), false advertising under 15 U.S.C. § 1125, unfair and deceptive trade practices under N.C. Gen. Stat. Ann. § 75-16 and Ark. Code Ann. §§ 4-88-107, 4-88-113(f)(2), and unfair competition under Arkansas common law. Each of the asserted claims involves both Morris's IntraGrill auger chiller and its COPE decontamination tanks.

About a month later, Morris moved to dismiss all of John Bean's causes of action for failure to state a claim. The district court denied the motion. *See Cooling & Applied Tech., Inc. v. Morris & Assocs., Inc.*, No. 2:15-CV-02211, 2016 WL 11597611 (W.D. Ark. Dec. 21, 2016). It ruled, in particular, that John Bean had adequately pleaded competitive injury from false marking. *Id.* at *3–4. The district court also ruled that the Patent Act's false-marking statute neither precluded John Bean's false-advertising cause of action nor preempted John Bean's state-law causes of action. *Id.* at *8.

On March 1, 2017, with the case name changed (because of John Bean's substitution for CAT), the district court entered an "Interim Scheduling Order" setting the

close of discovery for 81 days after it ruled on claim construction. *John Bean Techs. Corp. v. Morris & Assocs., Inc.*, No. 2:15-CV-02211, ECF No. 46 at 2 (W.D. Ark. Mar. 1, 2017). About seven months later, but before the court's claim-construction decision, Morris moved for a protective order to stop John Bean's discovery requests, directed at Morris itself, for sales and financial information involving Morris's IntraGrill auger chiller "until [John Bean] provides a factual basis . . . that at least one sale of Morris IntraGrill auger chiller proximately caused an injury to" John Bean. *Id.*, ECF No. 69 at 1 (Oct. 26, 2017). Soon after, the district court granted Morris a protective order because John Bean's requests were "disproportionate," given that John Bean had been "well aware" that it had "to produce evidence that it was proximately harmed by the alleged false marking." *John Bean Techs. Corp. v. Morris & Assocs., Inc.*, No. 2:15-CV-02211, 2017 WL 11179631, at *1 (W.D. Ark. Dec. 13, 2017). The district court "further ordered that Morris file a motion for partial summary judgment on John Bean's false marking claims with respect to the IntraGrill auger chiller." *Id.* at *2.

In early 2018, Morris moved for summary judgment against John Bean's claims concerning the IntraGrill for lack of evidence of competitive injury caused by the allegedly false representations that the IntraGrill comes within the '529 patent. In response, John Bean filed declarations asserting that Morris's "advertising of its competing product—the IntraGrill—as being patented" had caused Perdue Farms to impose certain costs on John Bean and arguing that further third-party discovery was needed before considering summary judgment. J.A. 2764, ¶ 11; *see also* J.A. 2740–43; J.A. 2745–48. In ruling on the summary-judgment request, however, the district court rejected John Bean's declarations and postponement argument. *John Bean Techs. Corp. v. Morris & Assocs., Inc.*, No. 2:15-CV-02211, 2018 WL 3039734, at *5, *6 (W.D. Ark. June 19, 2018). Because John Bean lacked evidence of the required

injury caused by the alleged wrong, the district court granted Morris summary judgment on all causes of action involving its auger chiller. *Id.* at *5, *9.

Litigation proceeded on the decontamination-tank part of the case. In December 2018, the district court construed various terms in claim 7 of the '173 patent and claim 10 of the '489 patent. It adopted an agreed-upon construction for the "upper opening-means" limitation, and it rejected constructions proposed by John Bean for several terms relevant here. *See John Bean Techs. Corp. v. Morris & Assocs., Inc.*, No. 2:15-CV-02211, 2018 WL 8458119 (W.D. Ark. Dec. 11, 2018).

After claim construction but before expert discovery, Morris moved for summary judgment on the claims involving the COPE decontamination tanks, arguing that the record required the finding that the Morris products fall within the representative claims, thus defeating John Bean's essential contention that Morris's representations were false. The district court granted the motion. *John Bean Techs. Corp. v. Morris & Assocs., Inc.*, No. 2:15-CV-02211, 2019 WL 4246696 (W.D. Ark. Sept. 6, 2019). Among other rulings, the district court determined that the inlet and outlet chutes in Morris's COPE products meet the "upper opening means" limitation as structural equivalents. *Id.* at *4–6. The district court also concluded that Morris's COPE products could be placed after a chiller, meeting the functional claim limitations at issue. *Id.* at *6. The court dismissed all causes of action with prejudice and entered final judgment.

John Bean timely appealed. Morris filed a conditional cross-appeal on preclusion and preemption. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

II

We apply the regional circuit's law for procedural issues not unique to patent law and apply our law for issues

involving substantive patent law.  *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018).  We review the district court's grant of summary judgment de novo and its admissibility and exclusion rulings for abuse of discretion. *Jain v. CVS Pharmacy, Inc.*, 779 F.3d 753, 758, 759 (8th Cir. 2015); *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018).

A

We start with John Bean's arguments about Morris's IntraGrill auger chiller.  For all five causes of action asserted by John Bean—false patent marking, false advertising, and three state-law wrongs—liability regarding the IntraGrill would require that Morris's patent representations about its IntraGrill chiller caused injury to John Bean as a competitor.  *See* 35 U.S.C. § 292(b) (only "a competitive injury as a result of a violation"); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014) (for false advertising, "economic or reputational injury flowing directly from the deception"); N.C. Gen. Stat. Ann. § 75-16 ("injured by reason of any act or thing done by any other person, firm or corporation"); Ark. Code Ann. § 4-88-113(f)(2) ("suffered an actual financial loss proximately caused by his or her reliance on the use of a practice"); *Esskay Art Galleries v. Gibbs*, 205 Ark. 1157 (1943) (unfair competition involves "the simulation by one person for the purpose of deceiving the public, of the name, symbols, or devices employed by a business rival, . . . thus falsely inducing the purchase of his" product over "his competitor").  The district court held that, even if there were a presumption of caused injury in what is asserted to be a two-firm market, the record contained insufficient evidence to allow a reasonable factfinder to find the injury required for liability.  *John Bean*, No. 2:15-CV-02211, 2018 WL 3039734, at *7–8 & *5 n.6.

We agree with the district court's conclusion, which suffices to affirm summary judgment on all the causes of action involving the IntraGrill auger chiller. We need not and do not decide whether, for any of the causes of action at issue, a presumption applies in the circumstances of this case. We have considered all of John Bean's arguments. Only one issue warrants discussion.

John Bean's evidence of the injury caused by the alleged wrong is limited to a single incident—which involved John Bean's sale of a chiller system to Perdue Farms. In that incident, John Bean asserts, it incurred costs or losses in competition with Morris's IntraGrill auger chiller because Morris falsely marked or advertised the IntraGrill as covered by the '529 patent. Opening Br. 48–53; Reply Br. 37–46. But the only evidence offered in support of the causation assertion was a declaration from a past John Bean employee stating that a Perdue employee mentioned Morris's patent marking as a reason that Perdue initially declined to buy John Bean's auger chiller with "water flow reliefs" that might infringe the '529 patent, only to later accept the feature as a no-charge modification—a process that John Bean says subjected it to some injury. J.A. 2741–43.

The district court, however, excluded the crucial statement on why Perdue first declined the feature as inadmissible hearsay and, under Fed. R. Civ. P. 37(c)(1), as coming too late in the litigation process given that John Bean had long been well aware that Morris disputed injury and yet never secured evidence from Perdue. *See John Bean*, No. 2:15-CV-02211, 2018 WL 3039734, at *5–6. We see no abuse of discretion in that ruling. *See Vanderberg*, 906 F.3d at 702 ("The disclosure mandates in Rule 26 are given teeth by the threat of sanctions in Rule 37."); *Scosche Indus., Inc. v. Visor Gear Inc.*, 121 F.3d 675, 682 (Fed. Cir. 1997) (refusing to "second-guess the district court's judgment that" a period was "adequate time for discovery," and

emphasizing that "[a] party cannot forestall summary judgment by arguing that it has not had an opportunity to complete its discovery when it has not pursued its discovery rights with vigor"); *Exigent Tech., Inc. v. Atrana Sols., Inc.*, 442 F.3d 1301, 1311 (Fed. Cir. 2006) (collecting sources saying the same).[2]

Having considered all of John Bean's arguments involving Morris's IntraGrill auger chiller and found them unpersuasive, we affirm the district court's grant of summary judgment as to the IntraGrill and the '529 patent.

B

We turn to John Bean's arguments about Morris's COPE decontamination tanks and claim 7 of the '173 patent and claim 10 of the '489 patent. If Morris's COPE products meet one claim of each patent, the challenged Morris representations are not false, eliminating a necessary premise of every cause of action. *See Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005). Following claim construction, the district court granted summary judgment to Morris, concluding that the evidence would not allow a reasonable factfinder to find the required falsity. We affirm that judgment without adopting all of the district court's reasoning.

---

[2]    For the part of the case involving the COPE products marked as patented under the '173 and '489 patents, Morris has raised no issue about injury to John Bean, even injury in fact fairly traceable to the alleged marking-based wrong. At oral argument, Morris agreed that the pleadings contained allegations and the record contained evidence of such injury to John Bean involving the COPE products. Oral. Arg. at 24:32–25:28, http://oralarguments.cafc. uscourts.gov/default.aspx?fl=20-1035_09012020.mp3.

1

In its main argument, John Bean argues that Morris markets some of the COPE products at issue for use other than after a chiller, removing them from the reach of the two representative claims. John Bean frames this argument in various forms as an attack on the district court's claim construction, asserting that the claims require that the claimed tank be next to the discharge end of the poultry chiller (*i.e.*, that they be post-chill) and directly receive whole birds. We reject this assertion.

In so arguing, John Bean relies on aspects of the claim language that speak of what the tank is "for" doing in relation to a pre-decontamination chiller. But for us to resolve this case, it is enough to observe that the cited "for" language—in what are product claims to the "tank assembly" itself, not claims to methods of use—is language of capability. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010). And we have long held that "an accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of non-infringing modes of operation." *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001); *see Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1216–17 (Fed. Cir. 2014) ("[W]hen the asserted claims recite capability, our case law supports finding infringement by a 'reasonably capable' accused device on a case-by-case basis . . . ."); *Finjan*, 626 F.3d at 1204.

The summary-judgment record establishes that each Morris COPE product is reasonably capable of being used post chill and directly receiving whole birds. *E.g.*, J.A. 3231, Tr. 35:2–36:1 (Deposition of John Shell, Morris's Chief of Design) ("[T]here's no difference between a COPE FC and Pre-COPE. In fact, they have the same part number in our part system."); J.A. 3248, Tr. 104:14–16 ("Pre-COPE is located at the inlet end, although the exact same

piece of equipment can be located at the outlet end."); J.A. 3260, Tr. 152:10–153:3. John Bean identifies no contrary evidence.

John Bean points only to evidence that Morris's products vary in size and that Morris advertises the products differently. Reply Br. 34. That is not enough to create a triable issue of fact. A smaller decontamination tank can still receive and discharge whole birds rather than bird parts, though it may do fewer at a time. And the advertisements address only the intended use rather than the products' capabilities.

Accordingly, all the COPE products are reasonably capable of performing the functional language in the relevant claims, and so John Bean cannot point to that language to establish that the COPE products are outside those claims.

2

John Bean challenges the district court's determination, on summary judgment, that Morris's COPE products meet the claim requirement of having "upper opening means for receiving the poultry carcasses in said tank and for discharging the poultry carcasses from said tank." We reject this challenge.

To literally meet a means-plus-function limitation, the product's structure must "perform the identical function recited in the claim and be identical *or* equivalent to the corresponding structure in the specification." *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999) (emphasis added). The district court determined that Morris's COPE products literally meet the "upper opening means" limitation because they perform the identical function and have an equivalent structure. *See John Bean*, No. 2:15-CV-02211, 2019 WL 4246696, at *5–6. John Bean argues that the district court improperly decided a factual question of structural equivalence at summary judgment.

We need not reach that issue.  John Bean's argument depends on the premise that, under the claim language and claim construction, there must be a single opening means that performs both receiving and discharging.  Only on that premise does John Bean argue that Morris's COPE products are outside the limitation (because, John Bean asserts, those products have two different openings, one for receipt, another for discharge).  We agree with Morris that John Bean's premise is incorrect.

The claim language "upper opening means for receiving the poultry carcasses in said tank and for discharging the poultry carcasses from said tank" does not limit the means performing the first function to also performing the second.  Notably, it does not require "a means"; it requires only "means."  The first formulation, we have said, would "potentially be ambiguous" about covering two means, one for each function; but the latter formulation we have specifically contrasted as not being so limited.  *See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1115 (Fed. Cir. 2002) ("The language of the limitation at issue *does not refer to 'a means for doing x and y.'*  In such a case, the claim could potentially be ambiguous about whether the limitation required one means for performing both functions x and y, or simply one means for performing function x and one (potentially different) means for performing function y." (emphasis added)).  The formulation used in this claim is not limited to a single two-function means.

The agreed-upon construction does not reflect a contrary concession by Morris.  The district court said: "The agreed function is 'receiving the poultry carcasses in the tank and discharging the poultry carcasses from the tank' and the corresponding structure is 'an opening in an upper portion of the tank or an upwardly positioned opening formed in the upper perimeter of the tank and equivalents thereof.'"  *John Bean*, No. 2:15-CV-02211, 2018 WL 8458119, at *10.  Although the district court used the

singular "function" to refer to two functions and the singular "structure," Morris itself stated in its claim construction brief that it was agreeing with John Bean only that "the *functions* associated with this means-plus-function phrase *are* 'receiving the poultry carcasses in said tank' and 'discharging the poultry carcasses from said tank,'" *John Bean*, No. 2:15-CV-02211, ECF No. 60 at 13 (June 23, 2017) (emphases added), and Morris explained to the district court that "you could conceivably have structure for each of those functions," J.A. 1456; *John Bean*, No. 2:15-CV-02211, ECF No. 66 at 111–12 (July 19, 2017).

Indeed, the construction's use of "or" for the corresponding structure reflects the specification's multiple embodiments, including one with "a partition . . . separat[ing] the tank into two sections." '173 patent, col. 3, lines 34–37; *see also*, *e.g.*, *id.*, col. 4, lines 46–52 ("an upright entrance wall 26" and "an opposing upright exit wall 28" "define a paddle chamber 33 with an upper opening means or upwardly positioned opening 32 that is formed in the upper perimeter of the tank"); *id.*, col. 6, lines 28–38 & fig. 7 (showing "a partition 66 that divides the tank in halves, with a paddle chamber 68 and a bird entrance chamber 70"). Thus, a relevant artisan would understand the claim language given the specification to allow one upper opening means for receiving and another for discharging.

John Bean disagrees, relying on *Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 (Fed. Cir. 2006), to assert a categorical rule that whenever a means-plus-function limitation "has two functions" one means "must perform both claimed functions" for the product's structure to be identical to the corresponding structure. *See* Reply Br. 22–23. But that position conflicts with the explanation of *Cardiac Pacemakers*, which reflects a straightforward difference in the meaning of "a means" and "means." It also is not supported by *Applied Medical*, which involved particular claim language that required a

single structure for two functions.  The claim language at issue—"*means* disposed circumferentially outwardly of the valve portions [1] for supporting the valve portions within the seal housing, *the supporting means* being movable relative to the housing [2] to permit the valve portions to float relative to the axis of the cannula," 448 F.3d at 1332 (emphases added)—established that the structure performing the first function (supporting) also performed the second (permitting).  The same is not true here.

Because the claim allows separate openings for the separate functions, John Bean is wrong in the essential premise underlying its contention that Morris's COPE products, with their inlet and outlet chutes, do not meet the "opening means" limitation in the two claims at issue.[3]  We have also considered John Bean's arguments contesting the district court's conclusion that Morris's products identically meet the limitation's function, which we find unpersuasive.

3

John Bean makes one challenge limited to claim 10 of the '489 patent.  Specifically, it disputes the claim construction for "means connected to said tank for supplying to said tank an antimicrobial-bearing liquid of different antimicrobial content than the liquid in the poultry chiller."  The district court concluded that the corresponding structure for this limitation does not require a control valve, only the conduit structures through which liquid enter the tank. *John Bean*, No. 2:15-CV-02211, 2018 WL 8458119, at *9–10.  John Bean argues that a control valve is required—and that Morris's COPE products, lacking such a valve on the

---

[3]    This conclusion makes immaterial whether, as John Bean argues, summary judgment was premature because it needed expert discovery on structural equivalence.

tanks, therefore cannot come within claim 10 of the '489 patent.

We reject this challenge, which accepts as a premise that Morris's COPE products *do* come within claim 7 of the '173 patent and so were properly marked with that patent. When a product is "properly marked with other patents," as here, the competitor "must show that the falsely marked patent[]" caused its injury and "that—for some reason—the properly marked patent[] did not." *Sukumar v. Nautilus, Inc.*, 785 F.3d 1396, 1402 (Fed. Cir. 2015). The record lacks evidence that John Bean would have made or sold a decontamination tank had there been no marking of the COPE products with the '489 patent, even though the marking with the '173 patent remained.

### III

Morris filed a conditional cross-appeal arguing that the Patent Act's false-marking statute, 35 U.S.C. § 292, precluded John Bean's federal false-advertising cause of action under the Lanham Act and preempted John Bean's state-law causes of action. Presentation of those arguments in this court did not require the filing of a cross-appeal, and therefore Morris should have presented them simply as alternative grounds for affirming the judgment in Morris's favor. *See TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004). On the merits, because we affirm the district court for the reasons above, we need not reach those arguments.

### IV

We affirm the judgment of the district court.

No costs.

### AFFIRMED